HARDCASTLE *et al.*, Plaintiffs in Error, v. HICKMAN *et al.*, Defendants in Error.

1. A. assigned his goods and stock in trade to B. for the benefit of his creditors; C. commenced a suit by attachment against A. and attached the goods assigned in the hands of B., and summoned B. as a garnishee; B., to obtain a surrender to himself of the goods attached, executed a bond in favor of C., of which the condition is as follows: "The condition of the above obligation is such, that, whereas the said obligee has commenced suit in the St. Louis court of common pleas, by attachment, returnable, &c., against A.; and whereas the sheriff of St. Louis county has by virtue of said attachment seized upon and taken into possession a part of the stock of

merchandise embraced in a deed of assignment from said A. to B., and has also summoned said B. as garnishee in said court; and whereas said obligee has directed and will cause the sheriff of St. Louis county to deliver and yield up to said B. the goods and merchandise so by him the said sheriff levied on by virtue of said writ of attachment: Now, if said obligee should fail to sustain his said suit so commenced by attachment as aforesaid—or if said obligee should sustain his said suit so commenced by attachment as aforesaid and obtain judgment against said B. as garnishee of A., and the said B. shall within thirty days thereafter pay the amount of such judgment to said obligee—then this obligation to be void. It is understood that by judgment is meant final judgment, and that the said B. will, in fulfillment of the condition of this obligation, *pay any judgment which may be rendered in the attachment suit aforesaid against said A., or against himself as garnishee of said,"* &c.

*Held,* that the contingency provided for in the condition of the bond was a failure, on the part of B., to pay such a judgment in the attachment suit as would reach the property attached; that is, one against himself; not a general judgment against A.

*Error to St. Louis Court of Common Pleas.*

Demurrer to a petition. The petition is as follows: " Plaintiffs state that said defendants on the 17th day of October, 1853, made their certain promissory obligation, under their hands and seals, which is in the words and figures following, to-wit: ' Know all men by these presents, that we, Benjamin F. Hickman and Robert Fisher, as principals, and James M. Hughes, surety, are held and firmly bound unto Addison L. Hardcastle, George F. Hardcastle and Walter B. Carr, doing business in St. Louis under the name and style of A. L. Hardcastle & Co., in the penal sum of $20,000, for the payment whereof we bind ourselves, our heirs and assigns firmly by these presents, sealed with our seals and dated this 17th of October, 1853, at St. Louis, Missouri. The condition of the above obligation is such, that whereas the said obligees have commenced suit in the St. Louis court of common Pleas, by attachment, returnable to the February term, 1854, of said court, against John Mudgett and William C. James; and whereas the sheriff of St. Louis county has by virtue of said attachment seized upon and taken into possession a part of the stock of merchandise em-

braced in a deed of assignment from said Mudgett & James
to said Hickman & Fisher, and has also summoned said Hick-
man and Fisher as garnishees in said suit; and whereas the
said obligees have directed and will cause the sheriff of St.
Louis county to redeliver and yield up to said Hickman · &
Fisher the goods and merchandise so by him the said sheriff
levied on by virtue of said writ of attachment: Now if said
obligees should fail to sustain their said suit so commenced
by attachment as aforesaid, or if said obligees should sustain
their said suit so commenced by attachment as aforesaid and
obtain judgment against said Hickman & Fisher as gar-
nishees of said Mudgett & James, and the said Hickman &
Fisher shall within thirty days thereafter pay the amount of
such judgment to said obligees, then this obligation to be
void.   It is understood that by judgment is meant final judg-
ment, and that the said Hickman & Fisher will, in fulfill-
ment of the condition of this obligation, pay any judgment
which may be rendered in the attachment suit aforesaid
against said Mudgett & James, or against themselves as gar-
nishees of said Mudgett & James.   [Signed] Benj. F. Hick-
man (seal), Robert Fisher (seal), James Hughes (seal).'
' It is understood and agreed that as the sheriff of said county
has already sold a few articles under said attachment, that
the said articles are not to be delivered under the above
agreement, the said articles being the same sold on the
morning of the above mentioned day at public sale, and that
this stipulation is a part of the above obligation.   As witness
our hands and seals the day and year above written.   [Signed]
Benj. F. Hickman (seal), Robert Fisher (seal), James M.
Hughes (seal);' which instrument in writing was delivered
duly signed and sealed by said defendant to said plaintiff, and
it is herewith filed as an exhibit hereto; and the said goods,
wares and merchandise, mentioned in said instrument as
levied upon by said sheriff, were delivered up to said Hick-
man & Fisher, excepting only the said articles that had been
sold by the sheriff of the value about five dollars; and the
said Hickman & Fisher received the said goods, wares and

merchandise so delivered to them by said sheriff, and caused the same to be sold and disposed of, and received the proceeds thereof. Plaintiffs further state that on the 19th day of February, 1856, at the February term of the St. Louis court of common pleas, they, the plaintiffs, recovered a final judgment against John Mudgett and William C. James, in the said suit of attachment against them, wherein said goods, wares and merchandise had been seized by said sheriff, for the sum of $10,948.78, with costs; which said judgment is in full force and effect, not satisfied or appealed from, or otherwise vacated; and neither the said Mudgett & James or the said defendants, or either of them, have, although often requested so to do, paid the same or any part thereof, but the same still remains due and unpaid; and the plaintiffs ask judgment against the defendants for the amount of said judgment and the costs thereon, with interest from the time of the recovery of said judgment, together with costs of this suit."

The court sustained the demurrer.

*Shepley* and *B. A. Hill*, for plaintiffs in error.

I. The literal meaning of the words of the bond is clear. It is to pay upon a judgment being rendered against Mudgett & James. The concluding portion of the condition appears upon its face to be added with a view to make the obligation certain and beyond dispute. There is no ambiguity in the bond and no repugnancy in its provisions. If the bond was made under a mistake of law as to the responsibilities of the parties, this is no defence. (4 Mass. 427 ; Hunt v. Rousmanier, 1 Pet. 361 ; 2 Dev. 508 ; 6 Johns. Ch. 166 ; 2 Mason, 342 ; 17 Verm. 435 ; 7 Paige, 137 ; 1 Stew. 81 ; 2 Humph. 148 ; 5 Humph. 529 ; 1 Gilman, 595 ; 4 Maryl. Ch. D. 335 ; 25 Ala. 452 ; 11 Texas, 211 ; 16 Ill. 457 ; 15 How. 162 ; 13 Ark. 129.)

*S. T. & A. D. Glover*, and *Gantt* and *Whittelsey*, for defendants in error, cited the following authorities: 2 Pars. 17 notes 14, 19, 115 ; 5 Term, 522 ; 1 How. 187, 169 ; 5 B. &

A. 606; 4 M. & S. 420; Cowp. 9; 1 Edw. Ch. 34; Chitty Cont. 61, 76; 8 Mass. 216; 19 Maine 397; Lieber's Hermeneutics, 99, 120; 1 How. 183; 4 Ark. 92; 6 Mart. 662.

NAPTON, Judge, delivered the opinion of the court.

The construction, which the court of common pleas gave to the bond sued in this case, is, in our opinion, the only one which it could receive consistently with the intent of the parties. The purpose of the instrument sufficiently appears upon its face. A suit had been instituted by the plaintiffs against Mudgett & James by attachment, and the property assigned to defendants was sought to be made liable to the attachment. The defendants, in order to retain the property and proceed with the sales they had commenced, agreed to pay the plaintiffs this debt if the suit against them as garnishees should prevail. The question between them was whether the property was liable to the attachment, or whether the assignment would hold it free from the attachment; and to provide for the settlement of this question either way was, beyond all doubt, the matter which the parties set about to accomplish in this bond. They did, beyond all doubt, make provision for this contingency, whichever way it might turn out. But in a supplementary or explanatory clause of the agreement another contingency is mentioned, which is, literally construed, a mere general judgment against Mudgett & James, and thus construed the contingencies previously provided for are rendered superfluous.

There could be no judgment against Hickman & Fisher *without first a judgment against Mudgett & James*. If the word " or" in the explanatory clause be replaced by " and" the whole agreement is easily explained and reconciled. This must be done in order to carry out the intent of the parties, or the judgment against Mudgett & James referred to in the explanatory clause must be understood to be such a judgment as would reach the property attached, and not a general judgment binding and reaching his general property—a judgment in which Hickman & Fisher could

have no concern or interest. The judgment spoken of in the bond, which was to fix the liability of the defendant, is a judgment in the suit *by attachment*—a judgment which would reach the property attached.

It does not appear from the recitals or obligatory clauses of this bond, that the validity of the claim of the plaintiff against Mudgett & James was a matter of dispute or doubt. But the matter in issue between the plaintiffs and defendants was, whether the property assigned to the latter was liable to this judgment or not. It may be that the parties supposed, that, as there was a plea in abatement put in, no separate judgment could be obtained against Mudgett & James. It may be that they supposed the law to be, that, where an assignment was fraudulent on the part of the assignors, Mudgett & James, it would fall altogether, although the creditors provided for may have had no participation in the fraud. It is not material what opinion may have been entertained about this matter. The question is, what kind of a judgment did they have in view when they spoke of a judgment against Mudgett & James alone? Did they mean a general judgment after a dismissal of the attachment, or did they mean a judgment that would bind the property attached? They speak of a judgment against the defendants, Hickman & Fisher, and they speak of a judgment against the defendants, Hickman & Fisher and Mudgett & James; and, in the concluding explanatory paragraph, they speak of a judgment against Mudgett & James alone. But, throughout, they speak of the judgments as obtained in the attachment suit, having clearly in view a judgment against the property in dispute, and not a general judgment in which the defendant could have no concern unless it clearly so appeared by the agreement.

It is said that no ambiguity is to be found in the language used in this concluding paragraph of the bond, and that we must give full effect to it, cost what it will. We do not consider ourselves at liberty to give this literal construction to it at the expense of sacrificing all the previous words of the

agreement, and the manifest intent of the parties as gathered from the whole instrument. This we must do in order to carry out the views of the plaintiffs.

What is the necessary consequence of giving to this instrument the construction claimed by the plaintiffs ? The substantial amount of the entire agreement is, according to this interpretation, that Hickman & Fisher bound themselves to pay a claim of the plaintiffs against Mudgett & James whenever it was finally established by a judgment in court. Now if this was the object of the parties—and it could be nothing more nor less, if we give the construction to the bond now insisted on—what was the use of any reference in the bond to the attachment, or to the probable or possible result of that attachment so far as it might affect the defendants and their claims under the assignment ? It was impossible for the plaintiffs to make any thing out of their attachment, or procure any judgment against Hickman & Fisher, unless the debt of Mudgett & James was first established. If that had no existence, all inquiry into the fraud of Mudgett & James was unnecessary and superfluous ; and if the intent was to make Hickman & Fisher responsible in the event of establishing the demand against Mudgett & James and upon that alone, it was perfectly useless, in the paper writing which was to provide for this, to say a word about the attachment or make any reference to any judgment against Hickman & Fisher, for no judgment could ever be obtained against Hickman & Fisher unless one was first had against Mudgett & James ; and if the latter contingency was to fix the liability to be provided for, why name any thing about the former ? The intent was, as the argument of the plaintiffs assumes, that Hickman & Fisher were to be responsible when the debt against Mudgett & James was established and however the attachment suit might terminate as to Hickman & Fisher and the property in the assignment. We then have the parties guilty of the absurdity of providing for a contingency which really and in fact had nothing whatever to do with fixing their liability. The contingency men-

tioned in the explanatory. clause, construed in this way, was the only one of any importance, and it was plainly one controlled by circumstances altogether independent of the attachment and assignment, and was in truth to be decided upon the single fact of indebtedness between Mudgett & James and the plaintiffs.

One would think that this purpose could have been accomplished in a much plainer and more simple and intelligible manner. We must suppose that this purpose must have sprung up near the conclusion of the writing sued on. It certainly did not exist when it was commenced, for it is totally inconsistent with every portion of the instrument except the concluding paragraph. If it was the design of this concluding paragraph to carry out a purpose of this sort, entirely inconsistent with all that preceded it and rendering the whole previous writing a dead letter, it is strange that men of business habits, competent to express their intentions clearly, did not abandon the agreement framed under a different idea as useless and not conforming to their subsequent understanding. It would have been more easy, more simple and more natural to have done this than to have attempted to interpolate a new contract in the old one, introducing a new liability swallowing up the old ones, and rendering all that had gone before entirely superfluous.

But the prominent, leading idea of the supplementary paragraph is to provide for the *finality* of the judgment, to render it clear that whatever judgments had been previously described should be only final ones, the termination of the litigation. Restricting the judgment against Mudgett & James to one of this character, and which necessarily reached the property in dispute, the entire agreement is consistent, easily understood, rational and perfectly fitted to effect the purposes which the recitals show were in the minds of the parties. To adopt the other interpretation and give a full, independent and unrestricted meaning to the words of the explanatory, concluding clause, would be to abolish all the recitals and obligations previously written down, and would

be moreover imposing an obligation upon the defendant, for which no reason is recited or alleged on the face of the agreement, and for which no motive can be perceived in the circumstances attending the transaction.

Judge Scott concurring, the judgment is affirmed ; Judge Richardson had been of counsel.