STATE ex rel. WILLIAM STINGER v. CHANCEY J. KRUGER, Judge of St. Louis Court of Criminal Correction.

In Banc, December 22, 1919.

1. **FORFEITURE: Oppression in Office: Jurisdiction of Court of Criminal Correction.** The statute giving the Court of Criminal Correction of the City of St. Louis "exclusive jurisdiction of all misdemeanors . . . the punishment whereof is by fine or

State ex rel. Stinger v. Kruger.

imprisonment in the county jail or both, or by any forfeiture," gives to said court jurisdiction to try a police officer charged with oppression in office, and to punish him by forfeiture of his office, in addition to fine or imprisonment. The words "or by any forfeiture" cannot be held to apply simply to forfeiture of money, but confer jurisdiction to try a· misdemeanor punishable by any kind of forfeiture.

2.  ——: ——: ——: Misdemeanor. Oppression in office, though punishable by forfeiture of office, is a misdemeanor, made so by statute (Sec. 1483, R. S. 1879), declaring that every person guilty of wilful and malicious oppression in his official capacity shall be guilty of a misdemeanor; and since another statute gives the Court of Criminal Correction of the City of St. Louis juris-diction to try misdemeanors, that court has power to try a police officer charged with oppression in office, although the ·statute fixes, as the punishment for such offense, forfeiture of office, in addition to fine or imprisonment in jail.

3.  ——: ——: Special Classification of Offenses: By Punishment Prescribed. If an offense is classified as a felony or as a misde-meanor by the statute which. creates it, its character as the one or the other is determined thereby, regardless of the punish-ment prescribed. Even though by the common law definition, or by one given in a statute declaring generally what elements are required to constitute a felony and what a misdemeanor, it is dif-ferently classified, the offense nevertheless falls within the class by which ·it is designated in the statute creating it. Since op-pression in office is classified as a misdemeanor, it is not to be held a felony because the punishment prescribed is forfeiture of office, in addition to fine and jail sentence.

4.  ——: ——: Misdemeanor: Infamous Crime: Constitutional Limitation. Oppression in office is by statute an "infamous crime." The constitutional provision empowering the Legislature to en-act laws "excluding from the right of voting all persons convicted of felony or other infamous crime, or misdemeanors connected with the right of suffrage," did not prohibit the Legislature from classifying infamous crimes disconnected from suffrage as felonies or misdemeanors.

5.  ——: ——: Punishment. Forfeiture of office is not the only punishment prescribed by the statutes for oppression and official misconduct; in addition, the culprit may be punished by fine and imprisonment in jail. The words of the statute (Sec. 4416, R. S. 1909) declaring that every officer convicted of said offense, "where no special provision is made for the punishment," shall be pun-ished by fine of five hundred dollars or imprisonment in county jail for one year, mean where no fine or imprisonment is pro-vided for, and do not exclude from the operation of the section

an official misdemeanor merely because forfeiture of office attends it, but make possible the imposition of a fine or imprisonment provided by other sections, in addition to forfeiture.

6. ——: ——: ——: **Disqualification to Vote.** Deprivation of the right to vote or hold office is not such punishment as, under the statute, determines the grade of the crime or the jurisdiction of the court.

7. ——: ——: ——: **By Fine or Forfeiture.** A statute which gives a court jurisdiction of all misdemeanors "the punishment whereof is by fine or imprisonment in the county jail or both, or by any forfeiture," gives the court jurisdiction of a misdemeanor the punishment whereof is by fine or imprisonment in jail or both *and* by forfeiture of office.

8. ——: ——: ——: ——: **The Words "Or" and "And:" Interchangeable.** The word "or" used in a statute will be construed to mean "and" in determining the jurisdiction of the court, where a contrary construction would be to defeat the obvious intention of the Legislature.

### PROHIBITION.

WRIT DENIED.

*Campbell Allison* for relator.

(1) The St. Louis Court of Criminal Correction is not only a court of limited jurisdiction, but its jurisdiction is more limited than is that of the justice of the peace. It is given jurisdiction only of certain misdemeanors that are punished in certain ways. Sec. 13, p. 2544, R. S. 1889; Ex parte O'Brien, 127 Mo. 447; Ex rel. Murphy, 132 Mo. 382; State v. Anderson, 191 Mo. 134. (2) The word "or," when used in a penal statute, denotes an alternative. The context shows that it was not used or intended to be construed as meaning "and." State v. St. Louis, 174 Mo. 145; Germania v. State, 7 Md. 1; State v. Walker, 97 N. C. 489; State v. Fairbanks, 115 La. 457; State v. Kearney, 8 N. C. 53; State v. McDonald, 4 Port. (Ala.) 449; State v. Nichols, 2 Muro (Del.) 448; Addison v. Ins. Co., 144 Mass. 591; Buck v. Danzenbacker, 37 N. J. L. (8 Vroom) 359. (3) The punishment of oppression in office, as provided

by Section 4411, takes it completely out of the class of misdemeanors over which the Court of Criminal Correction is given jurisdiction. Secs. 4411, 4413, 4416, 4925, 4924, R. S. 1909. (4) The word "forfeiture," as used in penal statutes and in criminal law, is always equivalent to fine or penalty. As it is used in the expression fine, penalty and forfeiture. Sec. 4919, R. S. 1909; Sec. 11, p. 2153, R. S. 1889; Ex parte Anderson, 39 Mo. App. 103; Cooley on Constitutional Limitations (6 Ed.), 752; Blair v. Ridgway, 41 Mo. 63; Chamberlain v. Wood, 88 N. W. 109; State v. Slade, 46 Tenn. (6 Gould) 233; 15 Cyc. 280. (5) An office is a part of the sovereign function of government delegated to an individual to be executed by him for the benefit of the people. Barnhill v. Thompson, 122 N. C. 493; State v. Hocker, 29 Fla. 477; Montgomery v. State, 197 Ala. 372; Patton v. Board of Health, 127 Cal. 388; Lindsay v. Atty. Genl., 33 Miss. 520. (6) An office is not property, neither is the right of office a property right. Primm v. City of Carondelet, 23 Mo. 22; State ex rel. Brown, 44 Mo. 129; State ex rel. Valli, 44 Mo. 30; Mead v. Curators, 47 Mo. 131; Westburg v. City of Kansas, 64 Mo. 503; State v. Shephard, 192 Mo. 509.

*Howard Sidener* for respondent.

(1) Conviction of oppression in office carries with it disqualification to hold office, loss of suffrage, and forfeiture of office. It requires no action on the part of the trial judge, or jury to attach the disabilities. They follow as a legal result of conviction. Secs. 4413, 4631, 4924, R. S. 1909; Barnett v. Pemiscott Co., 111 Mo. App. 693; Higgins v. Tally, 157 Mo. 280; Anderson v. State, 72 Ala. 187; State ex rel. v. Buckman, 18 Fla. 267; State v. Grant, 79 Mo. 113. (2) The word "and" will be substituted for the word "or," in a statute, to carry out the intention of the Legislature. Thomas v. Grand Junction, 13 Col. App. 83; Pollock v. Laura, 5 Fed. 133-135; State v. Lentz, 146 Pac. 932; 2 Sutherland on

Statutory Construction (2d Ed.), par. 397; Endlich on the Interpretation of Statutes, par. 303. (3) The St. Louis Court of Criminal Correction has jurisdiction over the crime of oppression in office, and has the power to try the case of State of Missouri v. William Stinger. State v. Lawrence, 45 Mo. 492.

*C. Orrick Bishop, Amici Curiæ; B. H. Charles* of counsel.

(1) The St. Louis Court of Criminal Correction is an inferior court, and there is no intendment in favor of its jurisdiction. State v. Anderson, 191 Mo. 134, 139; State ex rel. v. Murphy, 132 Mo. 382; Ex parte O'Brien, 127 Mo. 477, 487. While nominally a court of record, its real jurisdiction is but that of a justice of the peace. Cases supra. The jurisdiction is a prescribed and restricted one, and measured in terms of punishment. Laws 1869, p. 196, sec. 13. (2) The punishment for oppression in office is by fine or imprisonment or both and also disqualification to vote, and also disqualification to hold office, and also forfeiture of office. R. S. 1909, secs. 4411, 4413, 4416. (3) The statute confers no jurisdiction of a crime whereof the punishment is, among other things, a disqualification to hold office. The statute confers no jurisdiction of a crime whereof the punishment is, among other things, a deprivation of the right of suffrage. (4) What is the jurisdiction? Laws 1869, p. 196, sec. 13. (a) It is expressly limited to misdemeanors. (b) It is expressly limited to misdemeanors punishable in certain ways only: by fine, or by imprisonment in the county jail, or by both, or "by any forfeiture." (c) It does not extend to misdemeanors punishable by fine and "any forfeiture;" nor to misdemeanors punishable by imprisonment in jail and "any forfeiture;" but (so far as the last clause may have any meaning whatever) only to these misdemeanors which are punishable "by any forfeiture." (d) The crime of oppression in office

is not punishable by forfeiture only. (5)· The punishment prescribed for the crime of oppression in office (namely, fine or imprisonment, or both, and also forfeiture of office, disqualification to hold office and disqualification to vote) removes this crime from the jurisdiction of the St. Louis Court of Criminal Correction, and places it in the class denominated infamous crimes, of which the circuit court alone has jurisdiction. Mo. Constitution, Art. 6, sec. 22·; R. S. 1909, sec. 3956. It is of no consequence whether felonies and infamous crimes are in the same class. They are both distinguished from misdemeanors (other than misdemeanors connected with the right of suffrage.) Mo. Constitution, art. 8, sec. 10: Whatever may have been the classification of crimes at common law, i. e., infamous or otherwise, is of no consequence. Our statute creates a special class of infamous crimes, and does not extend the jurisdiction of the St. Louis Court of Criminal Correction over them. (6) The word "forfeiture" as used in penal statutes, especially when used in connection with the words "fine" or "penalty," has reference to a forfeiture of property rights, and is equivalent in meaning to fine or penalty. Ex parte Alexander, 39 Mo. App. 108; State v. McConnell, 70 N. H. 150; State v. Rose, 78 Kan. 600;. 1 Bouvier's Law Dict. p. 602; R. S. 1909, sec. 4919. The word "forfeiture," as used in this statute, has reference to property rights only. Laws 1866, p. 78, secs. 13 and 25; Laws 1869, p. 194, secs. 11, 17, 27. (7) The language used in the amendment was not "forfeiture of office," but "forfeiture." The statute confers no jurisdiction to forfeit an office.

GOODE, J.—Relator, William Stinger, seeks to prohibit the St. Louis Court of Criminal Correction from trying a case against him, wherein, by the information of the prosecuting attorney of said court, he is charged, as a member of the Metropolitan Police Department of the City of St. Louis, with wilfully, unlawfully and maliciously arresting and imprisoning Edward Meany,

while relator was acting in his official capacity, and with wilfully and unlawfully intending to oppress said Meany and deprive him of his liberty without any warrant to authorize the arrest, knowing Meany had been guilty of no violation of the law; in short, a prosecution for oppression in office, based on Section 4411, Revised Statutes 1909. That statute is as follows:

"Every person exercising or holding any office of public trust who shall be guilty of wilful and malicious oppression, partiality, misconduct or abuse of authority in his official capacity or under color of his office, shall, on conviction, be deemed guilty of a misdemeanor." [Sec. 4411, R. S. 1909.]

As regards punishment for a violation of said section, another section provides:

"Every person who shall be convicted of any of the offenses mentioned in the preceding sections of this article, shall be forever disqualified from holding any office of honor, trust or profit under the Constitution and laws of this State, and from voting at any election; and every officer who shall be convicted of any official misdemeanor or misconduct in office, or of any offense which is by this or any other statute punishable by disqualification to hold office, shall, in addition to the other punishment prescribed for such offenses, forfeit his office." [R. S. 1909, sec. 4413.]

Still another section says:

"Every officer or person holding any trust or appointment, who shall be convicted of any wilful misconduct or misdemeanor in office, or neglect to perform any duty enjoined on him by law, where no special provision is made for the punishment of such misdemeanor, misconduct or negligence, shall be punished by fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment." [R. S. 1909, sec. 4416.]

The jurisdiction of the Court of Criminal Correction was conferred in the act which established it, in these words: "Said Court shall have exclusive original juris-

diction of all misdemeanors under the law of the State committed in St. Louis County, the punishment whereof is by fine or imprisonment in the county jail, or both, except in cases of assault and battery and affray which shall continue to be cognizable by justices of the peace and in relation to which the jurisdiction of said court shall be concurrent with them." [Laws 1865-1866, p. 78, sec. 10.] That act was amended in 1868 (Laws 1868, p. 265), Section 10 of the original act becoming Section 13 of the amendment, but with a modification which was carried into a second amendment (Laws 1869, pp. 194, 196). In Section 13 of the Act of 1869, the jurisdiction of the court was thus defined: "Said court shall have exclusive jurisdiction of all misdemeanors under the laws of this State committed in St. Louis County, the punishment whereof is by fine or imprisonment in the county jail or both, or *by any forfeiture,* except cases of assault and battery and riotous disturbance of the peace, which are cognizable by justices of the peace and in relation to which the jurisdiction of said court shall be concurrent with them; and said court shall have concurrent jurisdiction with the police court of the City of St. Louis of all offenses which may be declared to be misdemeanors under any law of the State and which may also be in violation of any ordinance of the. City of St. Louis." It should be stated that since the separation of the city of St. Louis from the county, the jurisdiction is confined to offenses committed in the city. [State ex rel. v. Wilder, 198 Mo. 166, 172.]

The Court of Criminal Correction is a court of record, consisting of two divisions organized alike. The judges must possess the qualifications of a judge of the circuit court; the clerk, those of a clerk of the circuit court; a prosecuting attorney is provided for, who must possess the qualifications required of other prosecuting attorneys; the court may grant writs of *habeas corpus;* has jurisdiction of criminal appeals from justices of the peace; writs of error and appeals lie from it as from circuit courts, and with bills of exceptions. But never-

theless it is not a court proceeding according to the course of the common law and, therefore, has cognizance of no matters except those entrusted to it by the statutes. [Ex parte O'Brien, 127 Mo. 477; State ex rel. v. Murphy, 132 Mo. 382; State v. Anderson, 191 Mo. 134.] Its jurisdiction of the offense charged against relator is denied for several reasons which may be stated thus: First, the amendment of the jurisdictional section of the original act was intended to enable the court to try misdemeanors punished by a forfeiture of money, but not those punished by other forfeitures; for example, of an office. Second, the offense of oppression in office is not a misdemeanor at all and neither is it a felony, but an. anomalous crime distinct from either of those classes; and as the Court of Criminal Correction is given cognizance only of misdemeanors, it has none of the case against relator. Third, the phrase, "*or* by any forfeiture," in the amendatory acts, excludes from the court's cognizance misdemeanors punishable by fine, imprisonment in jail or both, *and* a forfeiture.

In support of their first proposition counsel for relator say the word "forfeiture" was used in the amendment in the sense of a fine; and sometimes it is thus used, especially in statutes prescribing the punishment for an offense. An instance is Ex parte Alexander, wherein the petitioner was seeking to be discharged from custody, he having been detained for non-payment of a fine imposed under a statute providing for a forfeiture of not more than one thousand dollars for selling lottery tickets. The prisoner contended the statute authorized no fine; hence the one assessed was illegal and he could not be imprisoned for not paying the one assessed. It was held *forfeiture* in the statute meant *fine* and the sentence of a fine was lawful. [39 Mo. App. 108.] A statute declaring that any one convicted of betting on an election "should forfeit and pay the sum of one hundred dollars to be recovered by indictment," was interpreted to mean an

*Forfeiture.*

offender should be fined that sum. [Commonwealth v. Avery, 14 Bush (Ky.) 625, 638.] Similar cases might be cited. The statute we are dealing with, was not enacted to prescribe the punishment for an offense, but instead to define what offenses a particular court may try, the criterion being the punishments prescribed for them in other statutes; and it may be that some statute had created a misdemeanor punishable by a forfeiture other than one of money, which the Legislature intended, by the amendment, to confer on the court power to try. The question at this point is, was that the legislative purpose? The reasonable view is that the jurisdictional clause was amended in order to enlarge the jurisdiction of the court, not to leave it unchanged; and if ''forfeiture'' in the amendatory acts was used as a synonym of ''fine'' it was a futile repetition which added nothing to the court's jurisdiction; since from the time of its creation it had possessed cognizance of misdemeanors punishable by a fine.

But the phrase in the amendment is ''by any forfeiture;'' words of broader significance than ''forfeiture'' by itself would be; for it is difficult to perceive how a statute conferring jurisdiction over misdemeanors ''the punishment whereof is  .  .  .  by *any* forfeiture,'' can be interpreted to mean only misdemeanors punishable by a single kind; that is, a forfeiture of money; or otherwise expressed, by a fine. The phrase ''any forfeiture'' implies that there were more than one kind, as in truth there were; and implies, too, that the Legislature meant to make all of them triable in the Court of Criminal Correction. When the amendatory acts were passed, fraud in office was a misdemeanor and thus punishable. [Gen. Stat. 1865, p. 808, secs. 18, 19.] So was the refusal of a jailer to receive a prisoner committed to his charge. [Ibid, p. 804, secs. 43, 44.] Oppression in office, though not expressly declared a misdemeanor until 1879 (R. S. 1879, sec. 1483), was treated as one in State v. Lawrence, 45 Mo. 492 (decided prior to that revision) and as not triable in the Court of Crimi-

nal Correction, solely because said court could not then try those punished by forfeitures. In the opinion the amendment of the jurisdictional clause after the case arose, was noticed as conferring power to try misdemeanors followed by a forfeiture, and as an argument to show this could not be done under the original act. The court needed only to construe the first act to decide the case; but the observations made regarding the amendment show the view taken of its purpose and effect when the power of the court below to try forfeiture cases first was challenged, and show, also, that official oppression was considered a misdemeanor. The fact that in 1868, when the jurisdiction was modified, there were the aforesaid misdemeanors and may be others, punishable by forfeitures, strengthens the conclusion that the Legislature intended to include them among the offenses triable by the court. In this connection we are pointed to the passage in the original act where the court was charged with the duty of requiring all officers in St. Louis County who collected "fines, penalties and forfeitures for misdemeanors under any law of the State," to pay the same into the county treasury (Laws 1865-6, p. 80, sec. 25), and to a section in the amendment requiring the clerk of the court to certify to the Auditor of St. Louis County a statement of the fines, penalties and forfeitures imposed by said court and collected by the marshal or the clerk and pay the same into the county (city) treasury. [Laws 1869, p. 194, secs. 11, 27.] As those provisions refer to forfeitures in the nature of "fines," it is said "forfeiture" in the Jurisdictional clause was used in the same sense. At the date of the amendment the General Statutes permitted a fine, penalty or forfeiture inflicted by any statute, to be recovered by indictment and said that in all cases it should "go to the State, county, corporation, person or persons to whom the law imposing the same declares it shall accrue." [Gen. Stat. 1865, p. 828, sec. 30.] Though a forfeiture of money, no matter in what court adjudged, was thereby required to go to designated

persons, it will not be asserted the law implied that no court had jurisdiction of any other species of forfeiture; for example, that of an office. Plainly the meaning of the word in the several statutes cited is not necessarily, nor in fact, its only statutory meaning; and the fact that the specified clauses of the acts concerning the court in question refer to forfeitures in the sense of fines, does not compel, nor even argue, that the word forfeiture was used in the jurisdictional amendments in the same sense.

Different reasons are assigned in support of the proposition that oppression in office is not a misdemeanor, the two briefs filed against the jurisdiction of the court below disagreeing somewhat regarding the construction of the statutes supposed to exclude the offense from the misdemeanor class. The brief for relator argues that it is a crime of another nature, because it is punishable only by forfeiture of office, whereas the statutes define a misdemeanor as "every offense punishable only by fine or imprisonment in a county jail, or both." [G. S. 1865, p. 828, sec. 35; R. S. 1909, sec. 4925.] Another brief says one convicted of official oppression can be fined, imprisoned in jail, disqualified to vote or hold office, and his office forfeited; hence as misdemeanors are declared to be offenses punishable only by fine or imprisonment, or both, the offense in question is of another kind. And the argument is advanced, too, that it is not a misdemeanor, or at least one not triable by the court below, because it is an infamous crime.

We have stated that in the Revised Statutes of 1879, Section 16 of Chapter 204 of the General Statutes of 1865 was amended, and that one of the changes made was a declaration that every person guilty of wilful and malicious oppression, etc., in his official capacity or under color of his office, should be deemed guilty of a misdemeanor. [R. S. 1879, sec. 1483.] Therefore, so far as the power of the Court of Criminal Correction

to try the relator depends on the act he is accused of being a misdemeanor, that statutory declaration is conclusive. If an offense is classified as a felony or as a misdemeanor by the statute which creates it, its character as the one or the other is determined thereby, regardless of the punishment prescribed; and even though by the common law definition, or by one given in a statute declaring generally what elements are required to constitute a felony and what a misdemeanor, it would fall in the other class. [State ex rel. v. Foster, 187 Mo. 590, 605.] In such a case the statute concerning the particular criminal act, works an exception to the general definition.

Long before the adoption of the present Constitution the offense in question was, as it still is, an infamous crime within the meaning of the statute defining such crimes as including every ·offense for which the culprit is ''disqualified, or rendered incompetent to be a witness or juror, or to vote at any election, or to hold any office of honor, profit or trust within the State.'' [G. S. 1865, sec. 34, p. 828; R. S. 1909, sec. 4924.] The Constitution empowered the General Assembly to enact laws ''excluding from the right of voting all persons convicted of felony or other infamous crime, or misdemeanors connected with the right` of suffrage.'' [Const. Art. VIII, sec. 10.] It is asserted for the relator that this provision of the Constitution prevents any infamous crime from being classed as a misdemeanor; which is the same as to say the Statutes of 1879, in declaring official oppression a misdemeanor, violated the Constitution. We understand the reasoning to run this way: From the mention of the three kinds of offenses for which a perpetrator may be disqualified by legislation to vote, the inference is to be drawn·that any offense which is neither a felony nor a misdemeanor connected with suffrage, but which nevertheless deprives of said right, is one of the ''other infamous crimes'' spoken of, but cannot be a misdemeanor.

20—280 Mo.

This interpretation of the cited provision is strained and unsound. The purpose of that clause of the Constitution was not to divide criminal acts into three distinct and unchangeable classes, nor to declare what transgressions should fall in one class and what in another. Neither was it intended to forbid the Legislature to make particular acts felonies or misdemeanors as might be deemed expedient, as was decided in a case involving a somewhat similar question. [State ex rel. v. Buckman, 18 Fla. 267.] The subject-matter of the provision was the voting franchise, and its purpose was to empower the legislature to withhold that franchise from persons unworthy to exercise it; namely, perpetrators of felonies or other infamous crimes, whether belonging to the misdemeanor class or not, and misdemeanors connected with the suffrage. Larceny in any degree, including, of course, petit larceny, always has been a misdemeanor and also an infamous crime followed by disabilities upon conviction. [G. S. 1865, p. 791, sec. 66; R. S. 1909, sec. 4631.] Simply because it was and is infamous, a perpetrator may be denied the right to vote pursuant to the constitutional clause in question, although the crime is neither a felony nor a misdemeanor connected with suffrage. What has been said answers all the objections as to the class of the offense relator stands charged with, that class having been fixed by a valid statute.

We pass to the third proposition asserted for the relator, namely, that the language of the acts to amend the jurisdictional clause of the act to create the Court

**Punishment.** of Criminal Correction, excludes relator's alleged offense from the cognizance of said court, because of the punishment prescribed. As stated before, the two briefs filed in opposition to the court's jurisdiction do not agree upon this point, and it is proper, perhaps necessary, to determine which view is right.

The theory that forfeiture is the sole punishment is arrived at by the following reasoning: Section 4416,

Revised Statutes 1909, says every officer who is con-victed of misconduct in office, etc., *where no special pro-vision is made for the punishment* of the misdemeanor, shall be punished by a fine not exceeding five hundred dollars or imprisonment in a county jail, not exceeding one year, or both. The emphasized words "where no special provision is made for the punishment" are said to remove the offense of official misconduct from the effect of that section because a special punishment is prescribed in Section 4413, namely, forfeiture of office, disqualification to hold office and to vote. In the stat-utes of 1865 and in earlier revisions, oppression in office, fraud in office, the exaction of illegal fees by officers, the collection of taxes not due or more than were due, were all declared criminal acts and penalties of fine and imprisonment were provided for each in the re-spective sections defining them. [G. S. 1865, ch. 204, secs. 16, 17, 19, 20.] Forfeiture of office and disqualifi-cation to hold office were prescribed also for official op-pression or fraud. [Ibid, secs. 18, 23.] In the same chapter was a section (21) exactly like Section 4416 of the present revision, and providing a general punish-ment for official misconduct when no special punish-ment was provided. Until 1879 that section applied to none of the offenses above enumerated, because every one had its particular punishment prescribed. In Re-vised Statutes of 1879, the special punishments by fine and imprisonment were omitted from the different sec-tions, but the disqualification for office, etc., and for-feiture of office, where these penalties attached, were left as before. [R. S. 1879, secs. 1483, 1485, 1487.] The purpose of this change was to include those offenses within the general punishment prescribed in Section 1488 of that revision (the same as Sec. 21, ch. 204, G. S. 1865, and Sec. 4416, R. S. 1909). The words "where no special provision is made for the punishment" mean, in our opinion, where no fine or imprisonment is pro-vided, and were not intended to exclude from the opera-tion of the section an official misdemeanor merely be-

cause forfeiture of office attended it. This view of the
matter becomes clearer in the light thrown on it by the
clause of the disqualifying and forfeiting section, which
declares that every officer convicted of misconduct pun-
ishable by disqualification to hold office, "shall *in addi-
tion to the other punishment prescribed for such of-
fense,* forfeit his office." [G. S. 1865, p. 808, sec. 23; R.
S. 1879, sec. 1485; R. S. 1909, sec. 4413.] The phrase we
have italicized evidently contemplated that penalties
other than forfeiture of office had been or might be pre-
scribed for oppression or other official misconduct—
penalties of fine or imprisonment (See, too, Const. 1875,
Art. 14, sec. 7); and we hold that since 1879 the punish-
ments provided in Section 1488 of the Revised Statutes
of that year (R. S. 1909, sec. 4416) could be inflicted for
oppression in office. In a case of conviction for that
crime, a fine was assessed by the jury and this was held
to be proper under Section 3737, Revised Statutes 1889
(R. S. 1909, sec. 4416), and by the judgment of the court
upon the verdict, the defendant was removed from office,
which also was held proper under Section 3734, R. S.
1889 (Sec. 4413, R. S. 1909). [State v. Ragsdale, 59
Mo. App. 590, 608.] That both punishments might be
imposed in the sentence was taken for granted. As to
whether Article II, Ch. 90, of the Statutes affects this
question, we need not now decide.

In one brief the position is taken that *all* conse-
quences prescribed in both sections (4416 and 4413)
would follow a conviction for official oppression, and on
this premise is based the main attack on the jurisdic-
tion of the Court of Criminal Correction. The argument
runs in this wise: the crime may be punished as fol-
lows, by, first, disqualification to vote; second, disquali-
fication to hold office; third, forfeiture of office, and,
fourth, fine or imprisonment, or both; whereas it is
contended the jurisdiction of the Court of Criminal
Correction is, under the amendatory acts, limited to
misdemeanors punishable in not more than two of those
ways, namely by fine or imprisonment or both or for-

feiture. If disqualification to vote or hold office, when incident to conviction for a misdemeanor, ousts the jurisdiction of the court below then it has none over petit larceny, for larceny in any degree disqualifies for those franchises. [R. S. 1909, sec. 4631; R. S. 1879, sec. 1378; G. S. 1865, p. 791, sec. 66.] Yet petit larceny is not only a misdemeanor, as said before, but it is one of which the Court of Criminal Correction has been held to have cognizance. [State v. Buchardt, 144 Mo. 83.] Therefore the argument against the court's jurisdiction fails in so far as it rests on the premise, that a loss of full citizenship upon conviction for a misdemeanor deprives the court of jurisdiction. No doubt the deprivation of civil rights in consequence of a crime is in a sense punishment; but it is not the punishment which, under our statutes, determines the grade of the crime, nor, in the case of misdemeanors attended with such a loss, does it determine the jurisdiction of the court in question.

The point most pressed it that the language of the amended clause whereby the court was given cognizance of misdemeanors the punishment whereof is fine or imprisonment in jail, or both, or forfeiture, excludes from the court's cognizance misdemeanors of which the punishment must be not only fine, imprisonment or both, but also forfeiture of office; that the word "or" preceding the words "by any forfeiture," operates to prevent the court from trying a misdemeanor where fine or imprisonment or both, *plus* forfeiture of office, must follow conviction. That is a refined and technical construction, for it is not easy to understand why the Legislature would confer the power to try misdemeanors entailing forfeiture alone, and not those also punishable in the usual way. However, the point must be determined by the settled rules of interpretation. The word *or* in statutes or documents is frequently interpreted to mean *and*, and this interpretation is given to it whenever required to carry out the plain purpose of the act or contract and when to adopt the literal meaning would defeat the purpose or lead

to an absurd result. [2 Sutherland, Stat. Const. sec. 397; Black, Interp. Laws, p. 228.] Some courts have gone so far as to say the words "and" and "or" are interchangeable as the sense may require (People ex rel. v. Rice, 138 N. Y. 151), an extreme rule and perhaps not supported by the weight of authority. But it is certain "or" is often interpreted to mean "and" and *vice versa* if the context shows that meaning was intended, or when, as said, an absurd consequence or frustration of the object of the enactment would otherwise follow. It is conceded this rule obtains in dealing with laws affecting civil rights, but insisted that it does not when a penal statute is involved, and that then the word must bear its ordinary meaning; and cases are cited which so hold. [Buck v. Danzenbacker, 37 N. J. L. 359; State v. Walters, 97 N. C. 489.] Although that rule of interpretation has been followed by some courts, it has not been by all, and a standard text-writer says: "It is opposed to the greater weight of authority, most of the cases holding that such a conversion of those two words, one into the other, is permissible in statutes of that character (i. e. penal) and where it may operate to the disadvantage of the accused, when the spirit and reason of the law plainly require and justify it." [Black, Interp. Laws, 230.]

The Supreme Court of West Virginia held that a clause of the State Constitution which declared no person should be deprived of life, liberty or property without due process of law *and the judgment of his peers*, did not mean that every accused person, whatever the charge, was entitled to a jury trial; but that the word *and* should be construed to mean *or*, and to provide that no one should be deprived of life, liberty or property without due process of law *or* the judgment of his peers. In reasoning upon the point the court said "due process of law" meant according to the law of the land, which never had accorded to a defendant, under all circumstances, the right to a trial by jury before he could be deprived of his property, and to do so would make gov-

ernment impracticable; saying further, that it was difficult to know why the conjunction *and* was used instead of *or,* but the provision must "be interpreted to mean the same as in the constitution of other states and the word 'and' used in it be interpreted to mean 'or.'" [Jelly v. Dils, 27 W. Va. 267, 274.]

A statute of Pennsylvania regarding contempts said no publication out of court respecting the conduct of the judges, officers of the court, etc., should be cause for an attachment; "but that the party aggrieved might proceed against the author, printer or publisher, or either of them, by indictment, *or* he may bring an action at law and recover damages." A person libelled first brought an action for damages and later the author of the libel was indicted under a statute against criminal libels. To this indictment a plea in bar was filed setting up that the prosecutor had previously instituted an action at law and, therefore, under the statute, the right to indict was lost. The court held this construction would operate to give the aggrieved party, instead of the attorney for the Commonwealth, the privilege of determining whether the culprit should be prosecuted or sued for damages; a result the Legislature could not have intended and therefore the word "or" should be given the meaning of "and" so that the statute would authorize both an indictment and an action for damages. [Foster v. Commonwealth, 8 Watts & Searg. (Penn.) 77.]

A defendant was indicted for "inveigling, stealing and carrying away three slaves," under a statute which, in that language, created the offense. The trial court instructed the jury the charge of "inveigling, stealing and carrying away," etc., would be established by any proof which satisfied the jury the defendant stole the slaves, and on the appeal this ruling was assigned for error. Another section of the statute was directed against persons who should hire, aid, or counsel any person to "inveigle, steal or carry away," etc. The first section related to the principal in the crime and

the second to an accessory. On appeal it was held the word *or* in the first section should be given the meaning of *and,* as the offense consisted in stealing a negro whether by inveigling him or in other ways. [State v. McCoy, 2 Speers (S. C.) 711.]

In a prosecution under a statute to regulate the sale of intoxicating liquors, which declared that "for every violation of the provisions of the first *and* second section of this act, every person so offending shall forfeit and pay a fine," etc., *and* was construed to mean *or.* The first section of the statute prohibited the sale, without a license, of intoxicating liquors to be drunk upon the premises where sold; the second section made it unlawful to sell to minors, persons intoxicated, etc. The defendant was convicted for selling without a license, and on appeal contended the punishment prescribed was for a violation of the first and second sections; that is, both, and he had been wrongly sentenced for violating only the first section. The opinion treated this contention lightly, as it deserved to be, saying: "Even a penal law should not be construed so strictly as to defeat the obvious intention of the Legislature. [American Fur. Co. v. United States, 2 Peters, 358.] *And* and *or* are convertible as the sense of the statutes may require. [Townsend v. Read, 10 C. B. (N. S.) 308; Boyles v. Murphy, 55 Ill. 236.] And this is the rule even in a criminal statute. [State v. Myers, 10 Iowa, 448; Miller v. The State, 3 Ohio St. 476.]" [People v. Sweetser, 1 Dak. 308, 314.]

A law provided that "if the father and mother of any child under the age of six years exposed it," etc., with intent to abandon it, they should be deemed guilty of a crime. A husband and wife were indicted for such a deed and the husband was tried and convicted. He appealed on the theory the crime was not committed unless his wife participated, pointing out that the law as it stood in a prior revision read: "If the father *or* mother," etc. It was contended the Legislature must have meant in substituting the word *and* for *or,* to

change the elements of the offense by requiring a joint perpetration by both parents. The court conceded that where the language of a statute is materially changed, ordinarily a change of meaning is intended and quoted a passage from Kent, setting forth the principles of interpretation:

"It is a rule in the construction of statutes, that, in the first instance, the grammatical sense of the words is to be adhered to. If that is contrary to, or inconsistent with, any expressed intention or any declared purpose of the statute, or if it would involve any absurdity, repugnance or inconsistency in its different provisions, the grammatical sense must be modified, extended or abridged, so far as to avoid such an inconvenience, but no farther: [Warburton v. Loveland, 1 Hud. & Brooke, (Irish) 2 Q. B. R. 648; Tolderoy v. Colt, 1 M. & W. 264.] Penal statutes are to be construed strictly. By this is meant only that they are not to be so extended by implication, and beyond the legitimate import of the words used, as to embrace cases or acts not clearly described by such words. They are not to be made to involve an absurdity, or frustrate the design of the legislators. [Rawson v. State, 19 Conn. 299; United States v. Goodwin, 12 Wheat. 460. See 1 Kent, page *463, note, and *465, note.]"

The court then said, apropos to the appeal it was considering, that if it adopted the construction invoked by the appellant, if one of the parents was dead, the survivor might abandon a child with impunity; and such a construction ought not to be placed on the statute, as it would defeat its purpose; that the word *and* may be interpreted as a disjunctive, and the word *or* as a conjunctive when the sense absolutely requires it. [State v. Smith, 46 Iowa, 670, 673.]

According to those authorities and others we might cite, the courts will depart from the literal meaning of the words of a penal statute even when to do so will be to the disadvantage of the accused; and this doctrine is applied in interpreting the very words with which

we are concerned. In harmony with the above cases, and expressly approving some of them, this court held the word *or* in a statute defining a crime, should be construed to mean *and* in order to avoid attaching a meaning to the law which would be inconsistent with a rational purpose in its enactment. [State v. Long, 238 Mo. 383, 392.] A text-writer of high authority says: "The conjunction *and* will be read as *or* and *or* as *and* when the sense obviously requires and this, in plain cases, even in criminal statutes against the accused." [Bishop, Stat. Crimes (3 Ed.), p. 259.]

We are not dealing with a criminal statute, but with a jurisdictional one. Nor will it be to the prejudice of relator to construe *or* as used in the amendatory act affecting the Court of Criminal Correction to mean *and;* for if his case were held not triable there but in some other court, the same consequences would attend conviction. Whatever may be the rule for interpreting these words in penal laws, when used elsewhere they are given the meaning their context or the purpose intended requires. This court displaced the word "or" and substituted "and" in a bond given in an attachment suit for the delivery of property, in order to avoid a consequence contrary to the intention of the parties. and despite the unambiguous language of the bond. [Hardcastle v. Hickman, 26 Mo. 475.] A law to exempt from execution the tools of a mechanic used to carry on his trade for the support of himself *and* family; was held to exempt the tools of a mechanic who was neither a housekeeper nor the head of a family, the word *and* being treated as equivalent to *or* in view of the general purpose of the law. [Geiger v. Kobilka, 26 Wash. 171.] It would be useless to pursue the numerous cases of like tenor. We have been cited to no statutes in force when the amendments were passed which created a misdemeanor punishable only by a forfeiture, except those where the so-called forfeiture was a mere fine. Where disfranchisement or disqualification to hold office, or

loss of office followed conviction, a fine or jail sentence could be imposed, too. Be that as it may, we have seen there were then misdemeanors punishable by fine *and* imprisonment and forfeiture of office, and hold the object of the amendment was to widen the court's jurisdiction by extending it over misdemeanors whereof the punishment was a forfeiture, even though the offense was punishable, too, by the other penalties of fine or imprisonment, or both.

Our preliminary rule is discharged and the writ denied. All concur.