THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CORNELIUS SCOTT, Defendant-Appellant.

(No. 11988; )

Fourth District—March 28, 1974.

Paul Bradley, Deputy Defender, of Chicago (Kenneth L. Jones, Assistant Appellate Defender, of counsel), for appellant.

Robert J. Bier, State's Attorney, of Quincy (Michael Prall, of Circuit Attorneys Project, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

The defendant was indicted by the Adams County grand jury in a four-count indictment charging murder, rape and kidnapping. During the course of a second jury trial after plea negotiations the defendant pleaded guilty to Count IV charging murder and kidnapping. His first trial ended in a mistrial. He was sentenced to an indeterminate term of 14 to 45 years.

Defendant claims as error on appeal: (1) that the grand jury which indicted him was not properly composed of all those individuals who were qualified to serve; (2) that the trial court erred in accepting defendant's negotiated plea of guilty because it did not adequately determine whether defendant understandingly and knowingly waived his right to jury trial and whether any force or threats were used to induce the plea.

Defendant Cornelius Scott was apprehended on November 28, 1971, pursuant to a complaint and warrant for his arrest for the alleged murder of Esther Bowman, age 77. A preliminary hearing was held on December 14, 1971, and defendant was bound over to the grand jury, which returned the indictments on December 29, 1971. Counts I and II charged defendant with murder while attempting the forcible felony of rape; and Counts III and IV charged defendant with murder while committing the forcible felony of kidnapping. At the time defendant was arraigned on January 4, 1972, the court admonished defendant of his right to trial by jury. Defendant filed a pre-trial motion to strike the indictment alleging that he was denied due process and equal protection of law due to the selection and composition of the grand jury in Adams County because the grand jury was not composed of a representative selection of all the registered voters of Adams County as prescribed by law. The defendant's motion was denied.

The defendant first contends that the composition of the grand jury venire that indicted him was deficient on the grounds that the jury commission of Adams County systematically excluded 18- to 20-year-olds from the selection of the grand jury. Defendant contends that this deficiency violates the Illinois Jurors' Act and constitutes a denial of due process. Defendant's reasoning is developed as follows. The Jurors' Act (Ill. Rev. Stat. 1971, ch. 78, par. 1 *et seq.*) states at section 1 essentially that the preparation of the jury list shall be done by the selection

of names of "legal voters" from the latest voter registration list of the town and precinct of a given county. Section 2 requires that a petit juror be of the minimum age of 21 years. Section 9 of the same Act in effect requires that a member of a grand jury must possess the same qualifications as provided in section 2 of the Act. In other words, the minimum age for any member of the grand jury must be 21 years. It is clear that Illinois law provides for the preparation of these jury lists by a selection of voters from the latest voter registration list. The jury list in this case from which the grand jury was selected existed in March 1971, prior to the ratification on June 30, 1971 of the twenty-sixth amendment to the United States Constitution which lowered the voting age from 21 to 18 and prior to the amendment of the Illinois Jurors' Act effective October 1, 1973, lowering the minimum age for jury service to 18. The defendant was indicted on December 29, 1971.

On December 28, 1971, the attorney general of Illinois issued an opinion stating that the 21-year-old age requirement is "one more of description rather than absolute requirement" and that "persons of the age of 18 years or upward may serve as jurors." (Op. Atty. Gen. Illinois, No. S-381, 1971.) The defendant reasons that the twenty-sixth amendment to the constitution impliedly repealed the age requirements of the Jurors' Act in light of this attorney general's opinion. Defendant contends that a substantial violation of the Jurors' Act automatically constitutes reversible error. The appellee answers that the legislature can set qualifications for jury service subject only to the limitations of due process, *i.e.*, reasonableness and fairness.

The question presented is whether there is evidence of any purposeful and arbitrary exclusion of qualified individuals from service on the grand jury which indicted defendant and whether the doctrine of implied statutory amendment is applicable.

The United States Supreme Court has consistently held that an improperly composed grand jury that reflects prejudice or bias against any segment of the citizenry is contrary to the principles of our democracy and will not be tolerated. This rationale has usually been subscribed to in the context of cases dealing with racial discrimination and in the formulation of grand jury lists. For example, it is a general rule that if a criminal defendant proves his allegations that Negroes were arbitrarily excluded from the grand jury that indicted him, and from the trial jury that convicted him, then neither the indictment nor the conviction can stand. (*Peters v. Kiff* (1972), 407 U.S. 493, 33 L.Ed.2d 83, 92 S.Ct. 2163.) This rule has uniformly been applied to situations where others than blacks were discriminated against. In *Hernandez v. Texas* (1954), 347 U.S. 475, 98 L.Ed. 866, 74 S.Ct. 667, the Supreme Court

reversed the conviction of a defendant who was of Mexican descent when he was able to show that other persons of Mexican descent were systematically excluded from the jury rolls. Defendant argues that this rationale would apply in a case where a group of society was arbitrarily excluded because of their age when *they properly qualified.*

Two United States Supreme Court cases are relied upon by the parties: *Peters v. Kiff*, by defendant; and *Carter v. Jury Commission of Greene County* (1970), 396 U.S. 320, 24 L.Ed.2d 549, 90 S.Ct. 518, by the State.

First of all, in *Carter*, black citizens of Green County, Alabama, instituted a class action in the United States District Court for the Northern District of Alabama against the county jury commission and its respective officers, alleging racial discrimination in their selection of prospective jurors and against the governor of Alabama, charging that he had deliberately appointed an all-white jury commission in the predominantly Negro county. The three-judge district court found that there had been systematic discrimination in the preparation of the jury list and directed that preparation of a new list in accordance with the laws of Alabama and constitutional principles. On appeal, the Supreme Court affirmed. Portions of the opinion that deal with the right of the state to establish specific minimum age qualifications for their jurors are germane to the issues in the case at bar. The Court specifically stated:

> "\* \* \* It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting *specified qualifications of age* and educational attainment, and to those possessing good intelligence, sound judgment, and fair character." (396 U.S. 320, 332, 24 L.Ed.2d 549, 559.) (Emphasis supplied.)

The Court went on to point out that nearly every state in the Union requires that jurors be citizens of the state and the United States, residents of the particular locality wherein the grand jury will sit, and of a specific minimum age, and able to understand English. As to the specific minimum age requirement, the Supreme Court noted that at least two states, Maryland and Nebraska, had minimum age requirements of 25 years. Furthermore, the Court recognized that not only did many states have minimum age requirements, they also had maximum age requirements. It is clear that there are no such ceilings concerning maximum age when dealing with the right to vote. Therefore, if it is invidious to discriminate in the compiling of grand jury lists against voters who are old enough to vote, yet too young to qualify to sit on the grand jury, then it could equally be asserted that it is also invidious discrimination to preclude individuals who are well within the legal age of voting,

but are considered to be too elderly to sit on grand jury panels. It is certain that once the state chooses to provide grand and petit juries, whether or not constitutionally required to do so, it must conform to the constitutional criteria in insuring that the selection of membership is free of arbitrariness. This particular rule is predicated upon the clear and discernible fact that to discriminate against an individual because of his race is a brand of inferiority and a throw-back to civil servitude. In other words, the racial classification is inherently invidious and unreasonable. However, the Supreme Court has not ruled as of yet that a classification predicated upon a minimum or maximum age requirement, notwithstanding the right of those individuals not meeting said requirement to vote, is an unreasonable or irrational classification.

In *Peters v. Kiff*, the petitioner sought a writ of habeas corpus alleging for the first time that Negroes had been systematically excluded from the grand jury that had indicted him and from the petit jury that had convicted him. The Supreme Court through Justice Marshall stated that a state may not subject a defendant to indictment or trial by a jury that had been selected in a discriminatory manner. Justice Marshall noted that "[i]llegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process." (407 U.S. 493, 502, 33 L.Ed.2d 83, 94.) Marshall went on to state that when a criminal defendant attacks the selection of the jury which either indicted or convicted him on the grounds that certain classes of individuals had been arbitrarily excluded, the harm from such alleged discrimination is so great, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants rather than to too few. Defendant relies upon this particular passage when exhorting this court to overturn defendant's conviction. However, it would appear that defendant's reliance upon this passage is misplaced because nowhere in the *Peters* case does the Court state directly or through implication that classification predicated upon age amounts to an invidious or arbitrary discrimination warranting the implementation of the quoted passage.

■■ We find from these authorities that a State can constitutionally prescribe specific qualifications of age, notwithstanding the fact that an individual may be qualified to vote because he is old enough, and at the same time be disqualified from sitting on a grand or petit jury because he is either too old or too young.

The defendant next argues that the ratification of the twenty-sixth amendment "impliedly repealed" the former age requirement of 21 and upwards for jury service by changing the age of legal voters from 21 to 18. The argument is grounded upon the rule of statutory construction that where two separate statutes were "in pari materia" the two statutes

are to be construed in such a way as to accomplish their purposes and the later expression of legislative intent will prevail over the earlier to the extent that the statutes are inconsistent and irreconcilable with each other.

This rule is clearly inapplicable to the case at bar. The twenty-sixth amendment to the United States Constitution embodies into the organic laws of this state the proposition that any citizen of the United States who is 18 years or older may not have his right to vote abridged because of age. This particular amendment does not purport to alter or regulate the various states, and/or for that matter the Federal laws dealing with the means used in compiling jury lists. The effect that the twenty-sixth amendment would have upon laws such as that found in Illinois concerning the jury list is merely incidental. The fact that the Illinois Jurors' Act relies upon registered voters for its sources for potential juries is merely coincidental to the force and applicability of the twenty-sixth amendment. The juxtaposition of these two very different laws—one a Federal constitutional amendment dealing with the fundamental right of voting, and the other a State law dealing with jury composition, is clearly not "in pari materia"; nor, are the two laws repugnant or irreconcilable.

Lastly, defendant argues that the trial court erred in accepting his plea of guilty without admonishing him that by pleading guilty, he waived his right to a trial by jury, and without determining whether any force or threats were used to obtain the plea. Essentially, the issue is whether or not the trial court substantially complied with Supreme Court Rule 402 when accepting Scott's plea of guilty.

■■ The rule is that there must be substantial compliance with Rule 402 before a guilty plea can be accepted by the court. (*People v. Mendoza* (1971), 48 Ill.2d 371, 270 N.E.2d 30.) What constitutes a substantial compliance is usually determined by an examination of the facts and circumstances in each case as set out in the entire record. See *People v. Arndt* (1971), 49 Ill.2d 530, 276 N.E.2d 306; *People v. Abel* (1973), 10 Ill.App.3d 210, 291 N.E.2d 841.

When viewing the entire record of the case at bar, we find the following colloquy of the court and the defendant, which the defendant sets out in his brief as the basis of the claimed error:

> "THE COURT: Your plea of guilty here has been offered to the Court, is one that has been voluntarily made? Do you understand what I mean by that?
>
> MR. SCOTT: Yes, Sir, it is on my own.
>
> THE COURT: It is on your own?
>
> MR. SCOTT: Yes, Sir.

THE COURT: Did any one hold out any promise to you, other than the fact that your attorney and the State's Attorney have entered into an agreement concerning the plea and the sentence? Is there any other promise, hope or reward, or anything of that nature that has been offered to you here?

MR. SCOTT: No, Sir. I only want to get this off my mind.

THE COURT: Now, do you fully understand that this plea you are entering here is done on your own, and that you do have the right to continue in your plea of not guilty to this charge? Do you understand that?

MR. SCOTT: Yes.

THE COURT: That you do have the right to have *this trial continued*, that has been started—do you fully understand that? (Emphasis supplied.)

MR. SCOTT: Yes, Sir."

The court detailed other rights of defendant and then continued questioning further as follows:

"THE COURT: Now, do you realize that by entering a plea of guilty to these charges, you are waiving all of those constitutional rights?

MR. SCOTT: Yes, I do.

THE COURT: Do you do that intelligently, and 'on your own,' as you put it.

MR. SCOTT: Yes, Sir."

Defense counsel argues that from this exchange defendant might not have understood the function of a jury and that they would act as triers of the facts. This argument is of little import when we examine the entire record and consider this with the other circumstances that preceded the court's interrogation and admonitions.

Defendant's first trial commenced on April 6, 1972; however, it ended in a mistrial on April 11, 1972, after a jury of 12 had been selected and during the court's voir dire examination of an alternate juror. Defendant's second trial commenced on May 30, 1972.

The defendant previously had been in court when vigorous arguments had been made in pre-trial motions attacking the grand jury venire. He had sat through 5 days of voir dire examination and selection of 12 jurors at the first trial; and then after that jury was selected, he was present during his attorney's argument and the proceedings leading up to the mistrial. Then with an entirely new panel of petit jurors at the second trial, he participated in the selection of eight more jurors for 2 days. Thus, after 7 days of jury selection proceedings, he and his attorney asked for a conference with the court wherein the plea bargain was presented, discussed and concurred in. The defendant at that time indi-

cated a positive understanding of the conference and stated that he had discussed the procedure with his attorney and was told what would happen and how it works. The trial was recessed with all the petit jurors, including the eight tentatively selected, advised to return later. The substance of the plea agreement provided for dismissal of the first three counts of the indictment and a recommended sentence of 14 to 45 years on Count IV only. The proceedings reconvened in open court and the substance of the plea negotiations made of record. The State presented a factual basis for the plea summarizing the evidence that would have been brought forth in a trial. The State also called one Michael Mallory, an admitted accessory to the crime, who testified concerning the relevant facts surrounding the commission of the offense. The admonition of the court then took place and the defendant's plea of guilty was entered.

The jury was waiting in the wings, so to speak, to proceed with the defendant's jury trial should he not persist in his plea of guilty, and it was during this recess and in the course of the court's most careful, exhaustive and detailed admonition to the defendant of the consequences of his changed plea and in compliance with the requirements of the Rule that the court in explaining defendant's rights to him and with this background used the terminology "right to have this trial continued, that has been started."

■■ Under the circumstances, there could be little doubt that the defendant understood clearly what the trial court meant when he stated "*this trial.*" It was this defendant's trial that he had requested originally; it was a second trial begun at his instance; both were jury trials with eight jurors selected and approved by him and his attorney when the plea was entered. The court's nomenclature under these circumstances was perhaps more clear than had the court stated "You have a right to a jury trial."

It is clear from this record that the defendant was of at least average or better intelligence and that he was represented by able and competent counsel who had advised him that it was wise to engage in plea negotiations with the state's attorney. It was equally clear that the court substantially complied with the mandated admonitions of Rule 402 and correctly determined under all the relevant surrounding circumstances that the defendant's plea of guilty was voluntary and that at the time, the defendant was aware of his rights being waived and the consequences of his plea. For the reasons stated herein, the judgment of the circuit court of Adams County is affirmed.

Affirmed.

SMITH, P. J., and SIMKINS, J., concur.