STATE of Missouri ex rel. Gene McNARY, Prosecuting Attorney of the County of St. Louis, State of Missouri, Relator,

v.

The Honorable Harry J. STUSSIE, Judge of the Circuit Court, St. Louis County, State of Missouri, Respondent,

and

John C. Danforth, Attorney General, State of Missouri, Intervenor.

No. 58785.

Supreme Court of Missouri, En Banc.

Nov. 12, 1974.

Motion for Clarification Overruled Nov. 29, 1974.

Ann Frances Carpini, Steven H. Goldman, Asst. Pros. Attys., Clayton, for relator.

George R. Gerhard, St. Louis, for respondent.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for intervenor.

FINCH, Judge.

This is an original proceeding in mandamus to compel respondent to proceed with the trial of a criminal case without requiring that eighteen to twenty year olds be summoned as jurors. At issue is whether Act 70, a statute adopted by the General Assembly in 1974, had the effect of amending § 494.010 [1] so as to reduce the minimum age for jurors from twenty-one to eighteen. We make peremptory the alternative writ of mandamus heretofore issued.

The statutory provision specifying qualifications for jurors is § 494.010, which provides as follows:

"Every juror, grand or petit, shall be a citizen of the state, a resident of the county or of a city not within a county for which the jury may be impaneled; sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified."

Act 70, Senate Bill 438, adopted by the 77th General Assembly,[2] which allegedly reduced the minimum age in § 494.010 to eighteen, reads thus:

"SECTION 1. The age of majority in this state is eighteen years, and all persons having attained that age are enti-

tled to all the privileges, rights and immunities, and subject to all the obligations, liabilities and responsibilities of adulthood and are not subject to any of the disabilities of infancy.

2. This act does not apply to any written instrument, contract, deed or trust indenture, conveyance, note or bank account made or executed before this Act becomes effective, nor shall it apply to or affect the rule of law known as the Rule Against Perpetuities or any conveyance made under the Missouri Uniform Gifts to Minors Act.

3. After the effective date of this act, a minor is a person who has not attained the age of eighteen years and whenever the term 'twenty-one years of age' is used as a limiting or qualifying factor it shall be deemed to mean 'eighteen years of age', and the revisor of statutes is hereby authorized to make the appropriate changes in the Revised Statutes of Missouri as they are revised, reenacted or reprinted.

4. The provisions of this act shall not apply so as to affect, change, or modify any laws of this state pertaining to alcoholic beverages."

The St. Louis County Board of Jury Commissioners utilizes the list of registered voters in the County as the jury list from which the names of prospective jurors are drawn. The list is computerized, and a master jury list is prepared annually by a computer program designed to select prospective jurors at random. Prior to the adoption of the 26th Amendment to the Constitution of the United States, the registration list contained only persons at least twenty-one years old because the age of qualified voters in Missouri was twenty-one. However, after ratification of that Amendment the list of registered voters included persons within the eighteen to twenty age range. In view of that develop-

---

1. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise indicated.

2. Vernon's Missouri Legislative Service, 1974, No. 2, p. 190.

ment, the computer was programmed so that in drawing names of prospective jurors, those who had not attained their twenty-first birthday would be rejected (to comply with § 494.010). In addition, when notices were mailed to prospective jurors, they contained the statement "You Must Be At Least 21 Years Old to Serve. If You Are Under 21 Years of Age, Indicate on Card and Return." As a result, no persons in the eighteen to twenty year range were summoned for jury duty.

The case of State of Missouri v. Dale Fredrick Owens was set for trial before respondent on the morning of August 13, 1974, the date on which Act 70 became effective. When the case was called, counsel for defendant Owens requested a continuance on the ground that there were no eighteen to twenty year olds on the jury array. Respondent heard evidence in connection with that request, after which he took the matter under advisement. The next day he announced that he would grant a continuance on the basis that Act 70 made persons eighteen to twenty years of age eligible to serve as jurors and on the further ground that absence of such individuals on the array would constitute a denial of due process to defendant Owens. However, respondent advised that he would not enter the order until August 26 in order to permit the prosecuting attorney, who contended that Act 70 was unconstitutional, to take any action deemed appropriate. Thereafter, on August 16, 1974, relator filed this proceeding.

■ At the outset, we consider whether mandamus is appropriate in this situation. We conclude that it is since it is clear that no adequate remedy through appeal was available to relator. Supreme Court Rule 28.04, V.A.M.R., provides that the state may appeal a criminal case prior to judgment only when an indictment is held insufficient and, of course, the state has no appeal from the acquittal of a defendant. Consequently, the State had no vehicle by means of an appeal to test respondent's decision that Act 70 is constitutional and that it requires that eighteen to twenty year olds be included on the list from which jurors are drawn. Mandamus is not usually granted to enforce performance of a discretionary function, absent an abuse of discretion, but the proposed continuance was not based on any exercise of discretion. Rather, respondent proposed to continue the case on the basis that Act 70 is valid and applicable, entitling Owens to have eighteen to twenty year olds on the array. If Act 70 is unconstitutional, respondent had no right to require that the jury include eighteen to twenty year olds as a condition to trying the case against defendant Owens. This presents a purely legal issue which can appropriately be decided in mandamus, particularly in a case such as this involving a matter of considerable public importance which may have substantial and widespread impact.

The first issue asserted by relator is that Act 70, and particularly § 3 thereof, is unconstitutional because it violates Art. III, § 28 of the Missouri Constitution, V.A.M.S. That section provides in part as follows:

"No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended."

The foregoing section is substantially the same as Art. IV, § 34, Mo.Const. 1875 and Art. IV, § 25, Mo.Const. 1865.

The historical explanation for constitutional provisions of this type is given in Vol. I of Cooley's Constitutional Limitations (8th ed.), p. 314. After pointing out that provisions of this type are found in the constitutions of numerous states, the text quotes from an opinion [3] written by Judge Cooley while a member of the Supreme Court of Michigan as follows:

3. People v. Mahaney, 13 Mich. 481, 497 (1865).

" 'The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for the express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation.' "

Decisions by this court recognize that the purpose of these constitutional limitations on statutory amendment (Art. III, § 28 and its predecessors) is as stated by Judge Cooley. In State v. Chambers, 70 Mo. 625 (1879), the court considered an act which sought to amend a previously existing statute by striking the words "assault, battery, affray, or other breach of the peace," in certain lines of the existing statute and inserting therein as replacements the words "a misdemeanor". After so providing, the amended act then proceeded to set out the section of the previously existing statute as it would be after the amendment. The court held the amendatory act valid and then said this with reference to Art. IV, § 34 (the predecessor of Art. III, § 28) 1. c. 628:

" * * * Section 3 of said act furnishes an illustration of what was intended to be forbidden by section 34, article 4 of the constitution. If said section had only contained the words 'Section 3 of said chapter 186 is hereby amended by striking out the words "assault, battery, affray or other breach of the peace" in the third and fourth lines of said section, and inserting in lieu thereof the words "a misdemeanor," ' the

amendment would have been in clear violation of said constitutional provision. The object of the prohibition from making amendments in such a way was to prevent the laws from becoming involved in the confusion which would necessarily result from such legislation; and to prevent the inconvenience it would occasion of hunting through various books to find the act amended and then apply to it the amendatory act to ascertain what the law as amended was."

In French v. Woodward, 58 Mo. 66 (1874), the court considered a statute which undertook to amend a previous act of the General Assembly incorporating the City of Mexico, Missouri (including a subsequent act which amended the statute which incorporated the city). The opinion points out that the amendatory act then under consideration by the court contained this provision:

" 'That § 3 of Art. VII, of the last named act (i.e. that of March 1871) be, and the same is hereby amended so as to authorize the city marshal to act as deputy constable in Salt River township, Audrain County, Missouri, in addition to his present duties.' "

The act did not set out the section of the previous statute as it would exist after amendment. In holding the amending statute invalid, the court said 1. c. 68:

"It will need but a very cursory examination in order to determine that this section is clearly obnoxious to the charge of unconstitutionality in this particular. It does not set forth, nor publish at length as if it were an original act or provision, 'the act or part of act amended,' as required by the twenty-fifth subdivision of Art. IV, of our constitution, but simply refers to a section and says 'the same is hereby amended so as to authorize,' etc., etc. To hold such an attempted amendment as this sufficient, would be to act in flagrant violation of a very admirable constitutional provision, one which, if heeded, would greatly tend, by the prevention of ambiguities and un-

certainties in legislative enactments, to discourage litigous strife, and one which, if obeyed, in the instance under discussion, might have entirely prevented or at least have given a much narrower basis for the present litigation."

See also *Morrison v. St. Louis, I. M. & S. Ry.*, 96 Mo. 602, 9 S.W. 626 (1888); *State v. Berry*, 253 S.W. 712 (Mo.1923); *State v. Fenley*, 309 Mo. 520, 275 S.W. 36 (1925); *A. v. Superior Court*, 27 Cal.App. 3d 292, 103 Cal.Rptr. 683 (1972).

The need for and the wisdom of Art. III, § 28 is demonstrated when one examines existing statutes to which Act 70, if valid, might be held to be applicable and then undertakes to resolve such questions of applicability.

Research concerning existing statutes by referring to Lexis, the computerized research program of MoBar Research, Inc., indicates that the phrase "twenty-one years of age" is used in 61 different Missouri statutes (including those as to which Act 70 is made inapplicable by §§ 2 and 4 thereof). In addition, 73 statutes use the phrase "age of twenty-one", terminology not appearing in § 3 of Act 70. If the language of § 3 is construed literally so as to make it inapplicable where "age of twenty-one" is used in those 73 sections, some rather anomalous results follow. For example, § 561.880, in which both terms are used, would then read as follows:

"It is unlawful for any person to give . . . any person between the ages of seventeen and twenty-one any falsified identification . . . for the purpose of establishing the age of such person as being *eighteen years of age* or older." (Change made in italicized portion.)

If, on the other hand, § 3 of Act 70 is construed to require substitution of "age of eighteen" for "age of twenty-one" whenever the latter appears, then we are going *beyond* what Act 70 literally states and directs and we would be amending statutes based on what we believe the General As-

sembly intended by their attempted blanket amendment. This is what Art. III, § 28 was designed to avoid. Statutory amendments should set out the statute as amended and not leave us to guess as to whether and in what respect an existing statute was amended.

The problem is even more complicated. Further reference to Lexis discloses existing statutes which use ages other than twenty-one when specifying eligibility or minimums or maximums for various purposes. For example, several statutes use the phrases "twenty years of age" or "age of twenty years". These include, for example, § 167.021, with reference to enumeration of students; § 178.380, with reference to junior college tuition; and § 560.610, dealing with forfeiture of civil rights on convictions. Other existing statutes establish different ages; for example, §§ 328.080 and 335.040 provide that barbers and nurses must be nineteen years of age. Can it be said that when § 3 of Act 70 says "twenty-one years of age" it sometimes means "nineteen years of age" and sometimes means "twenty years of age" as well? If it does not, then we must conclude that the General Assembly intended to amend §§ 332.131, 332.141 and 332.211 to provide that dentists need to be only eighteen whereas barbers and nurses still need to be nineteen. Perhaps the legislature so intended. If there had been compliance with Art. III, § 28, we would not be left to surmise.

The legislative intent in Act 70 is unclear. This is recognized in the brief filed by the Attorney General when he states as follows:·

"Intervenor would, however, reemphasize the importance that this court make a comprehensive ruling as to the general question of the constitutionality of Act 70. A narrow decision by this court would seemingly result in a flood of requests, through litigation and otherwise, for a determination of whether or not individual agencies, organizations and persons fall within the coverage of Act

70 and whether or not the act is constitutional as applied to them."

Many questions have arisen as to applicability of Act 70, some of which are already being presented to this and other courts. For example, does the obligation of a father to provide support for a minor under a divorce decree now terminate when the child reaches the age of eighteen? Is § 211.041 amended so that a child is free of juvenile court jurisdiction upon reaching his or her eighteenth birthday? Is § 211.-231 [4] amended so that indeterminate commitments by the juvenile court may not continue beyond the child's eighteenth birthday? These and the many similar questions raised by Act 70 illustrate the wisdom of a constitutional requirement that an amendatory statute clearly indicate the change being made by setting out the act as amended, thereby avoiding doubts as to applicability as well as to the terms of the change. They demonstrate that § 3 of Act 70 clearly violates Art. III, § 28.

In response to the contention that Act 70 violates Art. III, § 28, respondents assert that said constitutional provision is inapplicable because Act 70 amounts only to amendment or repeal by implication or by redefinition rather than by direct and specific amendment. Cases particularly relied upon are State ex rel. Maguire v. Draper, 47 Mo. 29 (1870), State ex rel. Speck v. Geiger, 65 Mo. 306 (1877), and State v. Miller, 100 Mo. 439, 13 S.W. 677 (1890).

In Maguire the question presented involved the validity and legal effect of a statute adopted in 1870 with reference to assessment and collection of revenue. It did not purport to amend any existing act or section thereof and made no reference thereto. Instead, it purported to be an act complete within itself. However, it was repugnant to and inconsistent with portions of a previously enacted revenue act. The court overruled a contention that the 1870 act violated Art. IV, § 25 of the 1865 Constitution, saying l. c. 32:

" * * * The statute under consideration, however, does not purport in terms to amend or repeal any particular act or section, and can only be held to have that effect by implication.

" * * * The Constitution has gone so far as to prohibit amendments in terms, except in a particular way, but it has not prohibited amendments by implication. It has not said that when an act is passed inconsistent with a preceding one, so that both cannot stand, the latter one shall be void and the earlier one shall prevail, but has left the law as it always has been, viz: that when two statutes are inconsistent and repugnant, the one last enacted shall be considered in force."

The doctrine applied in Maguire simply recognizes that occasions do occur in which some repugnance or inconsistency exists between two statutes adopted by the legislature. In such a situation, the court will attempt to reconcile them and apply both, but if this is not possible and both cannot stand, the later act will be held to have repealed by implication the earlier of the two acts, thereby giving effect to the most recently expressed legislative intent of the General Assembly. However, the doctrine applies only when the two inconsistent statutes each purport to be complete and independent legislation. 82 C.J.S. Statutes § 262a, p. 432. Furthermore, repeal by implication is not favored. State ex rel. George B. Peck Co. v. Brown, 34 Mo. 1189, 105 S.W.2d 909 (1937); Vol. I, Cooley's Constitutional Limitations (8th ed.), p. 316.

The Maguire case and the doctrine of repeal or amendment by implication are not pertinent to the issue of the constitutionality of what § 3 of Act 70 undertakes to do. Act 70 is not a completely new statute with reference to jurors, which is

---

4. This section represents still another method of stating applicable minimum or maximum age limitations. It provides that commitments by a juvenile court "shall not continue beyond the child's twenty-first birthday."

repugnant to the previously existing statute on the subject. Instead, without even specifically referring to the juror statute (or, for that matter, others to which Act 70 might be considered to be applicable), Act 70 undertakes on a blanket or shotgun basis to strike out of all statutes (except as provided in §§ 2 and 4 of Act 70) the words "twenty-one years of age" and to substitute therefor the words "eighteen years of age". The statute uses the phrase "shall be deemed to mean" but it is clear that a substitution of terms is intended and this is confirmed by the direction given to the revisor of statutes.

█ If Act 70 had stated that § 494.010 (the juror qualification section) was amended by striking out the words "twenty-one years of age" and substituting therefor "eighteen years of age" and had done nothing more, it is crystal clear that it would have violated Art. III, § 28. If Act 70, instead of referring to a specific section or sections, had said that in every statute when the term "twenty-one years of age" is used as a limiting or qualifying fact, it shall be stricken and "eighteen years of age" substituted, it is equally clear that it would be invalid under Art. III, § 28. The fact that instead of utilizing that specificity, Act 70 said that whenever the term "twenty-one years of age" is used, it shall be deemed to mean "eighteen years of age" and that the revisor of statutes shall make appropriate changes when the Revised Statutes are revised, reenacted or reprinted does not alter what the act undertakes to accomplish and does not cause it to be any less violative of Art. III, § 28. We cannot permit it to accomplish by such slight variation in format that which is not permissible when expressly so stated.

In Speck the legislature enacted a statute which abolished the offices of circuit and county attorneys in all counties except St. Louis and in lieu thereof established the office of prosecuting attorney. Election of a prosecuting attorney in every county except St. Louis was to occur at the general election of 1872 and every two years there-

after. Sec. 2 of the Act defined the duties of the new office by providing that prosecuting attorneys should perform all of the then existing duties of circuit and county attorneys. Sec. 4 of the Act then provided: "From and after the first day of January, 1873, whenever the words circuit attorney or county attorney shall appear in any of the statutes of this State, the same shall be taken and understood to mean prosecuting attorney, except in the County of St. Louis."

Relator was elected prosecuting attorney in 1872 and was a candidate again in 1874. That election resulted in a tie vote, following which the canvassers of the vote issued an order to the sheriff to issue a proclamation calling a special election. He did so, and at that election defendant received the highest number of votes and thereafter was commissioned. Relator then brought quo warranto to oust defendant, contending that when two or more persons receive an equal number of votes for certain offices including circuit attorney, the applicable election laws provided that the Governor should issue the proclamation calling a special election and that the sheriff had no right to do so. The circuit court so held. That judgment was affirmed on appeal, the court holding that the 1872 prosecuting attorney act did not amend the previously existing statute but simply furnished a rule of construction (a definition) of the term circuit attorney and hence did not contravene Art. IV, § 25 of the 1865 Constitution. The court stated that said constitutional provision had no application to repeals by implication.

It may be that the Speck case is distinguishable from the instant case. The act there construed made no substantive change such as lowering the age for jury service and a myriad of other things from twenty-one to eighteen. It provided that the prosecuting official thereafter should be a prosecuting attorney rather than a circuit attorney and that the duties prescribed for circuit attorneys would then be performed by the prosecuting attorney. It

was a kind of redefinition. The case does not, in our view, provide support for holding that Act 70 does not violate Art. III, § 28. However, to the extent, if at all, that Speck is susceptible to being construed as being inconsistent with what we hold herein, it no longer should be followed.

■ Having determined that § 3 of Act 70 violates Art. III, § 28 and hence is unconstitutional, the question arises as to whether the entire act is invalid or whether § 3 is severable, leaving a complete and enforceable act under the test prescribed in cases such as State ex rel. Enright v. Connett, 475 S.W.2d 78 (Mo. banc 1972).

We conclude that § 3 is not severable. If § 3 is eliminated, that leaves only § 1 of the Act to effectuate legislative change because §§ 2 and 4 simply create exceptions thereto. Examination of §§ 1 and 3 disclose that they are interwoven and seek a single purpose, namely, making a minor one who has not attained the age of eighteen and accomplishing that purpose by amending statutes so as to substitute "eighteen years of age" for "twenty-one years of age". When § 3 falls, no separate, independent purpose or enactment remains in what is left of the Act. If Act 70 with § 3 deleted accomplishes the same thing as the Act with § 3 included would have done, then it is clear that no separate act exists and § 3 is not severable. To sustain the remaining act would be to nullify the effect of voiding § 3 by permitting achievement of the same objective as if § 3 had not been stricken down.

It has been suggested that § 1 is purely definitional and not amendatory and that it can stand for that reason. Presumably, if that conclusion should be adopted, the definition of age of majority would be comparable to definitions contained in § 1.020 which are applicable whenever the term is used anywhere in the statutory laws of the statute "unless otherwise specifically provided or unless plainly repugnant to the in-

tent of the legislature or to the context thereof."

We do not believe that the General Assembly intended § 1 to be purely definitional of "age of majority" with no applicability to statutes which express limiting or obligating conditions in terms of specific ages rather than majority and minority. However, even if § 1 be so interpreted, we end up with a statute (after deleting § 3) which, in our judgment is not one which we can permit to stand. Whereas § 1 in that event applies only where statutes speak of age of majority or perhaps adulthood, § 4 provides as an exception thereto statutes which say nothing about age of majority but are cast in terms of specific ages. See §§ 311.300, 311.310, 311.320 and 311.325. Thus the act which remains is inconsistent within itself and is not one we can conclude the General Assembly would have adopted. Consequently, it does not meet the test of severability expressed in Enright and similar cases.

Accordingly, we conclude and hold that all of Act 70 is unconstitutional.

■ Finally, we have the question of whether, irrespective of the validity of Act 70, the absence of persons eighteen to twenty years of age on the jury array deprives a defendant of due process. We hold that it does not. A state may establish the age for jury service at twenty-one and that right is not affected by the passage of the Twenty-sixth Amendment to the United States Constitution or the fact that the state's minimum age for voting is eighteen. People v. Scott, 17 Ill.App.3d 1026, 309 N.E.2d 257 (1974); Hopkins v. State, 19 Md.App. 414, 311 A.2d 483 (1973); United States v. Osborne, 482 F. 2d 1354 (8th Cir. 1973); cf. State v. Taylor, 109 Ariz. 267, 508 P.2d 731 (1973); State v. Cornell, 281 N.C. 20, 187 S.E.2d 768 (1972).

Our alternative writ of mandamus is made peremptory.

All concur.

**638**

## ON MOTION FOR CLARIFICATION

### PER CURIAM.

In what is styled a motion for clarification, intervenor has requested that this court answer the question "Was Act 70 void from its inception and, therefore, never of any force or effect?"

In support of his request, intervenor states that he is informed through various sources such as news stories and telephone calls that citizens took action between August 13, 1974, and November 12, 1974, in reliance on Act 70 and that disputes could end up in courts in which the legal issue "would probably be whether Act 70 was void from its inception". He concludes "a definitive ruling on that legal issue at this time could, and intervenor believes would, reduce both the amount and complexity of this litigation".

It is apparent that intervenor's motion does not seek the resolution or clarification of any question which affects this mandamus proceeding or the parties thereto. Rather, it asks the court to decide a legal issue which may arise in cases in the future involving unknown controversies and factual issues and involving unidentified parties. In other words, it seeks an advisory opinion.

The law is well settled in Missouri that the courts do not render advisory opinions. State ex rel. Missouri Public Service Co. v. Elliott, 434 S.W.2d 532, 536 (Mo. banc 1968); State v. Division 1287 of Amalgamated Ass'n of Street, Electric Railway, and Motor Coach Employees of America, 361 S.W.2d 33, 46 (Mo. banc 1962); Harris v. Consolidated School District No. 8 C, Dunklin County, 328 S.W.2d 646, 654 (Mo. banc 1959); State ex rel. State Board of Mediation v. Pigg, 362 Mo. 798, 244 S.W.2d 75, 79 (1951); Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 71–72 (1949).

Intervenor's motion for clarification is overruled.