STATE of Missouri, Plaintiff–Appellant,

v.

Michael J. COOR,
Defendant–Respondent.

No. 14888.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 26, 1987.

Motion for Rehearing or Transfer
Denied Nov. 10, 1987.

Application to Transfer Denied
Dec. 15, 1987.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Robert P. Warden, Joplin, for defendant-respondent.

HOGAN, Judge.

Defendant Michael J. Coor was charged with twenty-three (23) counts of failure to pay sales tax in violation of § 144.480, RSMo 1986.[1] Upon defendant's motion, the trial court dismissed Counts One (I) through Twenty (XX) on the ground that § 144.510 denounces violations of §§ 144.-010 through 144.510 as misdemeanors and prosecution of the offenses charged in Counts One (I) through Twenty (XX) was barred by the 1–year statute of limitation imposed by § 556.036.2(2). The trial court severed Counts Twenty-one (XXI), Twenty-two (XXII) and Twenty-three (XXIII) pursuant to Rule 24.07. The State has appealed.

Although neither party to the action has questioned the jurisdiction of this court, we are nevertheless bound to determine sua sponte that appellate jurisdiction exists before we consider the appeal on its merits. *State v. Garrett*, 642 S.W.2d 378 (Mo.App. 1982); *State v. Fender*, 600 S.W.2d 683, 685 (Mo.App.1980); *State v. Barton*, 567

---

**1.** References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (17th ed. 1986), except where otherwise specifically noted.

S.W.2d 460 (Mo.App.1978). In this case, the question of appellate jurisdiction is almost as complicated as the sole issue tendered on the merits.

### I

#### (A)

*Does the appeal require "construction" of a "revenue law" within the intent of Mo. Const. Art. V, § 3?*

■ Mo. Const. Art. V, § 3 (as amended 1982) provides in terms that our Supreme Court has "exclusive appellate jurisdiction in all cases involving ... the construction of the revenue laws of this state." To adjudicate this appeal on its merits we are obliged to construe § 144.480. In one sense, § 144.480 is a "revenue law" because it is part of the Sales Tax Law, which has existed as a coherent body of statutes since 1933. Laws of Mo. 1933–34, Ex.Sess. p. 155. Nevertheless § 144.480 neither purports to impose a tax nor to prescribe a method of computing or collecting a tax. Section 144.480 is a criminal statute, and this court is only required to determine whether violation of § 144.480 is a felony or a misdemeanor. The defendant's duty to pay sales tax is not in issue.

*State v. Lauridsen*, 312 S.W.2d 140 (Mo. 1958), is instructive. In that case, the defendants were charged with failure to procure a license required by a revenue statute. On appeal, the defendants maintained the Supreme Court had jurisdiction because a construction of the revenue laws was required and because a construction of the Constitution of the United States and of this State was involved. The court pointed out that the real question presented was whether the defendants had violated the law and continued:

"So in a case of conviction or acquittal on a charge of operating without a proper license, required by a revenue statute, the result *does not directly affect the right of the state to collect revenue, prohibit it from collecting any revenue, or to do any act or enforce any obligation in connection therewith, or to directly adjudge or enforce the pay-*

*ment of any revenue.* If we should uphold defendants' contention that the construction of the revenue laws is directly and primarily involved, we would have to hold that we had jurisdiction in every misdemeanor case in which there was a conviction for failure to get a license or to do or fail to do any other act in connection with the assessment or payment of taxes, which is made such an offense...." (Emphasis added.)

*State v. Lauridsen*, 312 S.W.2d at 142. So, although it is necessary on this appeal to determine the meaning of § 144.480, the result will not directly affect the right of the state to collect revenue, prohibit it from collecting any revenue, or to do any act or enforce any obligation in connection therewith, or to directly adjudge or enforce the payment of any revenue. To reiterate, the sole issue is whether a criminal defendant's violation of § 144.480 is a felony or a misdemeanor. We conclude that no construction of the revenue laws, in the appellate jurisdictional sense, is directly involved and this court has jurisdiction if the State has a right of appeal.

#### (B)

*Does the State have a right of appeal?*

The State cavalierly assures us of its right to appeal by citing § 547.200.2. No precedent is cited. The subsection of § 547.200 upon which the State relies reads as follows:

"2. The state, in any criminal prosecution, shall be allowed an appeal in the cases and under the circumstances mentioned in section 547.210 and in all other criminal cases except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant...."

■ The basic rule is that the State cannot appeal a judgment for the accused, whether it is upon a verdict of acquittal or upon the determination of a question of law, unless a right of appeal is unequivocally conferred by statute. *State v. Craig*, 223 Mo. 201, 122 S.W. 1006 (1909); *State v. Evans*, 679 S.W.2d 434, 435 (Mo.App.1984);

*State v. Little River Drainage District,* 490 S.W.2d 675, 676 (Mo.App.1973).

Section 547.210, which has been on the books for many years, permits an appeal by the State when any indictment or information is adjudged insufficient upon demurrer or exception, or when the judgment is arrested or set aside. Our courts have held, nevertheless, that § 547.210 does not permit an appeal by the State from the dismissal of an indictment or information based on matters dehors the record. *State v. Brooks,* 372 S.W.2d 83, 85 (Mo.1963); *State ex rel. Martin v. Berrey,* 560 S.W.2d 54, 59 (Mo.App.1977).

The rationale of the decisions so holding appears to be that pretrial dismissal of an indictment or information upon consideration of evidence outside the record is the functional equivalent of an acquittal. In *State v. Perou,* 428 S.W.2d 561 (Mo.1968), the defendant moved to dismiss the indictment on the ground that the prosecutions were barred by limitation. The trial court agreed and sustained the motion to dismiss. The State appealed and our Supreme Court dismissed the appeal, holding that the effect of the court's dismissal upon the ground that the prosecution was barred by limitation was a discharge on the merits and a bar to further prosecution on an unappealable ground. *State v. Perou,* 428 S.W.2d at 562–563.

The *Berrey* case dealt with a plea of former jeopardy, which, as our colleagues at Kansas City recognized, relates to matters beyond the record, so a dismissal on that ground could not be appealed by the State.

In *State v. Jewell,* 628 S.W.2d 946 (Mo.App.1982), the trial court dismissed an information on the ground that the prosecution was barred by limitation after hearing evidence which, the State argued, tolled the statute of limitation. The Western District dismissed the State's appeal, holding that a dismissal for insufficiency of the information within the intent of § 547.210 is a dismissal for failure to state an offense and is determined from a reading of the charge itself. The court also held that because the dismissal was based on consideration of evidence outside the record, the *Perou* case required dismissal of the appeal. The *Jewell* decision is factually similar to the case at hand, for in this case the State pled fraud as an element of the offense charged in each count, and fraud in the commission of an offense may extend the period of limitation under the present statute. Section 556.036.3(1).

Despite these and other similar decisions, it was recognized before the enactment of present § 547.200 that the State's right of appeal was inadequate. In *State ex rel. McNary v. Stussie,* 518 S.W.2d 630 (Mo. banc 1974), the State was without an appropriate remedy to determine the validity of a statute reducing the minimum age for jurors to 18. Our Supreme Court recognized that the State had no vehicle by means of an appeal to test the constitutionality of the act and resolved the legal issue tendered by entertaining an action in mandamus. Of course, in *State ex rel. Hannah v. Seier,* 654 S.W.2d 894 (Mo.banc 1983), the supreme court refused to expand the State's right of appeal by utilizing prohibition to review a dismissal of several counts of an information upon the ground that the prosecutions were barred by limitation. The trial court had heard evidence dehors the record. The court speculated that Laws of Mo. 1983, H.B. 279, part of which became § 547.200, might afford the State a right of appeal in such a case.

In *State ex rel. Martin v. Berrey,* 560 S.W.2d 54, our colleagues at Kansas City resorted to the writ of prohibition to supplement the State's right of appeal in a case which had been dismissed because of former jeopardy. The court perceptively observed that appeals by the State in criminal cases are made exceptional because they tend to threaten the policy which sustains the double jeopardy principle. *State ex rel. Martin v. Berrey,* 560 S.W.2d at 59. Another case in which the inadequacy of the State's right of appeal was recognized is *State ex rel. Corcoran v. Buder,* 428 S.W.2d 935 (Mo.App.1968). In that case an information had been dismissed on the due process ground that the defendant had not been afforded a speedy trial. Our col-

leagues at St. Louis concluded the State's right of appeal was inadequate and supplemented that right by utilizing the writ of mandamus.

The General Assembly is presumed to be aware of existing declarations of law and the construction of existing statutes when it enacts a law on the same subject. *Howlett v. Social Security Commission*, 347 Mo. 784, 792, 149 S.W.2d 806, 811–812[11] (banc 1941); *State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35, 41 (Mo.1969); *Bushell v. Schepp*, 613 S.W.2d 689, 691–692[3] (Mo.App.1981). A new statute must be construed in light of the defect it sought to remedy and the usages, circumstances and conditions existing at the time the change was made. *Darrah v. Foster*, 355 S.W.2d 24, 31[12] (Mo.1962); *Ross v. Conco Quarry, Inc.*, 543 S.W.2d 568, 575 (Mo.App.1976). In light of *State ex rel. McNary v. Stussie*, 518 S.W.2d 630, *State ex rel. Martin v. Berrey*, 560 S.W.2d 54, and *State ex rel. Corcoran v. Buder*, 428 S.W.2d 935, it was apparent that some pretrial dismissals of criminal prosecutions were not appealable, even though the trial court might have dismissed the information for an erroneous reason. We believe, and hold, that the phrase "... in all other criminal cases ..." is broad enough to include those cases in which an indictment or information is dismissed on grounds "dehors the record." The trial court's order is appealable under the provisions of § 547.200.2 unless the "possible outcome of [the] appeal [may] result in double jeopardy for the defendant."

### (C)

*Will the "possible outcome" of this appeal result in double jeopardy for the defendant?*

The rationale of *Perou, Berrey, Jewell* and like cases is neither obscure nor infirm. A similar view prevailed in the federal courts until recently, on the very ground suggested in the *Berrey* case. In 1971, federal law permitted Government appeals from orders dismissing an indictment or information except that no appeal lay where further prosecution would be barred

by the double jeopardy clause of the United States Constitution. 18 U.S.C. § 3731 (Supp.1972). In *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), it was held that an appeal did not lie from a decision which rested, not upon the sufficiency of the indictment alone, but upon extraneous facts. If the indictment was dismissed as a result of a stipulated fact or the showing of evidentiary facts outside the indictment, which facts would constitute a defense on the merits, no appeal was available. In such circumstances, the dismissal was the functional equivalent of an acquittal. *United States v. Rothfelder*, 474 F.2d 606, 608[1] (6th Cir.1973), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3066, 37 L.Ed.2d 1044 (1973).

The construction of the fundamental organic law has changed since 1975. In *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), the United States Supreme Court squarely rejected the argument that consideration of evidence extrinsic to an indictment on motion to dismiss places a defendant in jeopardy thereby prohibiting subsequent appeal of the dismissal. The Court enunciated the general principle that:

> "Although an accused may raise defenses or objections before trial which are 'capable of determination without the trial of the general issue,' Fed Rule Crim Proc 12(b)(1), and although he must raise certain other defenses or objections before trial, Fed Rule Crim Proc 12(b)(2), in neither case is he 'subjected to the hazards of trial and possible conviction.' [Citation omitted.] ... Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy."

*Id.*, 420 U.S. at 391–392, 95 S.Ct. at 1064, 43 L.Ed.2d at 276.

Our Rule 24.04(b) limits the defenses or objections which may be considered to those susceptible of determination without trial of the general issue, as does its federal counterpart, Fed.R.Crim.P. 12(b). Fed. R.Crim.P. 12(b)—which seems to have served as a model for our Rule 24.04(b)— requires that the bar of limitation be raised

by pretrial motion.[2] However, the bar of limitation is not an element of the crime charged, and a tender of the general issue in a criminal case does not put the bar of limitation in issue. *United States v. Walsh,* 700 F.2d 846, 856, 69 A.L.R.Fed. 233, 247 (2d Cir.1983), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). *Cf. State v. Civella,* 364 S.W.2d 624, 628–629[4] (Mo.App.1963). So, in this case, the circuit court was not trying the question of defendant's guilt at the hearing on his pretrial motion. The consideration of matters dehors the record did not place the defendant in jeopardy and the order of dismissal is appealable. *Cf. United States v. Valle,* 697 F.2d 152, 154[1] (6th Cir.1983), *cert. denied,* 461 U.S. 918, 103 S.Ct. 1901, 77 L.Ed.2d 289 (1983).

## II

### *Is violation of § 144.480 a felony or a misdemeanor?*

Section 144.480, in its present form, was enacted as part of an extensive revision of the Sales and Compensating Use Tax Laws. Laws of Mo.1974, H.B. 1288. It is apparent from a reading of the act of 1974 that the General Assembly did not intend to amend the existing statute, but rather intended to repeal former § 144.480 and create a new offense. The enacting clause of the act of 1974 stated in terms that "Sections 144.480, 144.490, 144.735, 144.740 and 144.745, RSMo 1969, are repealed and five new sections are enacted in lieu thereof, to be known as sections 144.480, 144.490, 144.-735, 144.740 and 144.745, to read as follows:

> "144.480. *Penalty for failure to furnish a return.*—Any person ... required by sections 144.010 to 144.510 to make a return, keep any records or supply any information, who with intent to defraud willfully fails to pay such tax, make such return, keep such records or supply such information, at the time or times re-

quired by law, shall in addition to other penalties provided by law and upon conviction thereof, *be fined not more than ten thousand dollars or be imprisoned in the county jail for not more than one year or by not less than two nor more than five years in the state penitentiary or by both fine and imprisonment together with the cost of prosecution.... "*

The General Assembly did not amend or repeal § 144.510, a more general statute, which provides:

> "Any person, officer, agent or employee of any firm, corporation, association, joint adventure, estate, trust, receiver or syndicate violating any of the provisions of sections 144.010 to 144.510 [The Sales Tax Act] shall be deemed guilty of a misdemeanor, and, where punishment is not otherwise provided for herein, shall be punished for such."

The plain language of the act of 1974 indicates that the General Assembly intended to repeal the statute which had been encoded as § 144.480, RSMo 1969,[3] and to enact a new statute. Because the repeal of the old statute and the enactment of another was clearly intended and expressly stated, we have no responsibility or authority but to follow and apply the legislative will as expressed. 1A Sutherland, Statutory Construction § 23.07, p. 326 (4th ed. 1985).

The statutes which classified crimes as "felonies" or as "misdemeanors" in 1974 were § 556.020, RSMo 1969, and § 556.040, RSMo 1969. Section 556.020 provided that:

> "The term *'felony,'* when used in this or any other statute, shall be construed to mean any offense for which the offender, on conviction, is liable by law to be punished with death or imprisonment in a correctional institution of the state department of corrections, and no other."

Former § 556.040 provided that the term "misdemeanor" was to be construed as in-

---

**2.** 8 Moore's Federal Practice (Rules of Criminal Procedure) par. 1203[2], p. 12–28, n. 24 (Waxner rev. 1987).

**3.** And which read "Any person failing or refusing to furnish any return hereby required to

be made, or failing or refusing to furnish a supplemental return or other data reasonably required by the director of revenue shall be deemed guilty of a misdemeanor."

cluding every offense punishable by a fine or imprisonment.

For many years before its original appellate jurisdiction was redefined in 1970, our Supreme Court had exclusive appellate jurisdiction "in all cases of felony." [4] Until Art. V, § 3 of the Constitution of 1945 was amended, the precedents generally indicated that in the context of appellate jurisdiction, a crime was a "felony" if it was punishable by imprisonment in the penitentiary even though a lesser punishment was permissible and was in fact imposed. *State v. Plassard*, 355 Mo. 90, 92–93, 195 S.W.2d 495, 496[1] (banc 1946); *State v. Melton*, 117 Mo. 618, 23 S.W. 889 (1893); *State v. Combs*, 301 S.W.2d 529, 530[2] (Mo.App. 1957).

Nonetheless, the place of imprisonment or confinement did not finally determine whether an offense had been denounced as a "felony" or a "misdemeanor." Before the Criminal Code was enacted in 1977, Laws of Mo.1977, S.B. 60, it had been settled law since 1905 that when an offense was created or defined, and the punishment affixed thereto was such that the accused might be punished by imprisonment in the penitentiary, such offense was a felony; but, when the General Assembly itself named the offense there was no room for controversy and the offense was whatever grade, felony or misdemeanor, that the General Assembly called it. *State ex rel. Stinger v. Krueger*, 280 Mo. 293, 304–305, 217 S.W. 310, 313[3, 4] (banc 1919); *State ex rel. Butler v. Foster*, 187 Mo. 590, 86 S.W. 245 (banc 1905); *State v. Smith*, 498 S.W.2d 595, 597–598[3] (Mo.App.1973).

■ Another general principle to be borne in mind in classifying a violation of § 144.480 as a felony or misdemeanor and in harmonizing § 144.480 with § 144.510, is that when there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giv-

ing effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them the special will prevail over the general statute. When the special statute is later, it will be regarded as an exception to, or qualification of the prior general one. *State v. Mangiaracina*, 344 Mo. 99, 103–104, 125 S.W.2d 58, 60 (1939); *State v. Harris*, 337 Mo. 1052, 1058, 87 S.W.2d 1026, 1029[6] (1935).

■ Presuming that the General Assembly acted with a full awareness and complete knowledge of the state of the law when it repealed § 144.480, RSMo, and enacted what is presently that section, *State v. Rumble*, 680 S.W.2d 939, 942 (Mo.banc 1984), we find that: 1) the General Assembly created or defined an offense punishable upon conviction by imprisonment in the penitentiary, which is a correctional institution of the state department of corrections; 2) the offense created was not specifically denominated a "misdemeanor"; 3) the act of 1974 which is now § 144.480 denounced violations of the Sales Tax Act, but did so in particular and specific terms because it applies only to violations committed willfully and with an intent to defraud, and 4) § 144.510 is the more general statute, designed to provide a punishment for those violations not covered by §§ 144.480 and 144.490. We conclude § 144.480, when it was enacted, was intended to denounce a felony, not a misdemeanor.

We must, of course, consider what effect the enactment of the Criminal Code of 1977, Laws of Mo 1977, S.B. 60, had upon the classification of non-code offenses as "felonies" or "misdemeanors." Some parts of the Criminal Code were made applicable to existing non-code offenses. *See* The New Missouri Criminal Code: A Manual for Court Related Personnel [hereinafter *Manual* ] § 1.7, p. 1–3 (1978). Specifically § 556.031.2 provides:

"Offenses defined outside of this code and not repealed shall remain in effect, but unless otherwise expressly provided or unless the context otherwise requires,

---

**4.** *See* Mo. Const. Art. V, § 3 (1945). The Constitution of 1875, Art. VI, § 12, as amended in 1884, contained a similar provision, which apparently was not always observed. *See State v. Thayer*, 158 Mo. 36, 58 S.W. 12 (1900); 1964 Wash.U.L.Q. § 7.010, p. 607.

the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such offenses."

After the Criminal Code was enacted but before it became effective, it was believed that:

"Paragraph 2 [of § 556.031] deals with the more complex problem of the applicability of the Code provisions to non-Code offenses, that is, offenses which are committed after the effective date of the Code but which are defined by statutes outside of the Code. One of the purposes of the Code was to make the criminal law consistent and thus some Code provisions will be applicable as to non-Code offenses. However, the Code does not affect the definition of the non-Code offenses, that is, the elements (the conduct and mental states) of the non-Code offenses are determined by the statute defining the non-Code offense. *If the statute defining the non-Code offense sets out the specific range of punishment that may be imposed upon conviction, that penalty provision and not the Code provisions apply.* No specific language of the statute defining the non-Code offense can be changed by a provision of the Code. See State ex rel. McNary v. Stussie, 518 S.W.2d 630 (Mo. banc 1974). However, the Code provisions which are not inconsistent with the wording of the non-Code offense will apply to the non-Code offense." (Emphasis added.)

*Manual,* § 1.7, p. 1–4.

The authors of the *Manual* listed a number of Code provisions which could be applicable to a non-code offense. Only two of the examples set out are of interest in this case. Example (a) states:

"If the non-Code offense *does not specify the range of punishment that may be imposed upon conviction,* but simply declares the offense to be a felony or a misdemeanor, then the offense is treated, if a felony, as a class D felony under the code, or, if a misdemeanor, as a class A misdemeanor under the code. See § 557.021.1 and 2." (Our emphasis.)

This exception can have no application here, because the range of punishment to be imposed upon conviction is specific. Example (h), however, provides that:

"The preliminary provisions of Chapter 556 *dealing with time limitations (§ 556.036)* and on convictions for multiple and included offenses (§§ 556.041 and 556.046) *also can apply to non-Code offenses."* (Emphasis added.)

Considering the obvious intention of the General Assembly to denounce a felony when it enacted § 144.480, we hold that the statute of limitation applicable to violations of that statute is the 3–year statute made applicable to felonies by § 556.036.2(1).

### III

*Has the period of limitation been extended by the State's failure to discover the fraud?*

■ A further word is necessary to dispose of the appeal. At the hearing on the pretrial motion, evidence was presented which indicated that the State may not have discovered the "intent to defraud"—which is an element of the crime denounced by § 144.480—for some time after the offense was committed. The trial court indicated preliminarily that it believed the State had knowledge of the fraud by March 8, 1985, but made no specific finding on that point. The offenses charged by Counts One (I), Two (II), Three (III), Four (IV) and Five (V) were allegedly committed on November 1, 1982, November 22, 1982, December 20, .1982, January 31, 1983, and February 21, 1983. The information was filed March 21, 1986. By the express terms of § 556.036.5 a prosecution is commenced, for the purposes of limitation, when an indictment is found or an information is filed. The 3–year bar of limitation will apply to Counts I, II, III, IV and V unless it has been tolled by the provisions of § 556.036.3(1), which reads:

"3. If the period prescribed in subsection 2 has expired, a prosecution may nevertheless be commenced for:

(1) Any offense a material element of which is either fraud or a breach of fiduciary obligation within one year after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party ... but in no case shall this provision extend the period of limitation by more than three years...."

The *Comment* appended to this section states that "... subsection 3(1) provides for a possible extension in cases of fraud where the fraud is not discovered until sometime after the commission of the offense." Subsection 3(1) of § 556.036 is identical to Subsection 3(a) of § 1.06 of the Model Penal Code, *see* Model Penal Code and Commentaries Part I § 1.06, p. 91 (1985), and was included because it was thought that the peculiar difficulty of detecting defalcations of this nature justified some tolling of the statute. Model Penal Code § 1.07, Tent.Draft No. 5, p. 21 (1956).

Rule 30.22 requires us to "direct the trial court concerning further proceedings to be taken." The trial court is directed to ascertain whether the fraud was discovered March 8, 1985, or earlier, as the defendant contends. The State will then be permitted to refile all counts of the information not barred by § 556.036.2(1) except as the bar of limitation may have been tolled by the provisions of § 556.036.3(1). We realize it is our duty to dispose finally of the case unless justice otherwise requires. Rule 30.23. When, however, the trial court has made no positive finding and the documents upon which its finding should depend are not before us, our direction is necessarily general.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.