**STATE of Missouri, ex rel. Albert
A. RIEDERER, Relator.**

v.

**The Honorable H. Michael
COBURN, Respondent.**

**No. WD 45305.**

Missouri Court of Appeals,
Western District.

Dec. 31, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 3, 1992.

Application to Transfer Denied
June 30, 1992.

428

Albert A. Riederer, Pros. Atty., Jackson County, Joseph P. Bednar, Robert Frager, Asst. Pros. Attys., Kansas City, for relator.

Susan L. Hogan, Acting Appellate Defender, J. Bryan Allee, Asst. Appellate Defender, Kansas City, for respondent.

Before KENNEDY, P.J., and BERREY and ULRICH, JJ.

ULRICH, Judge.

Relator, the Jackson County Prosecuting Attorney, on behalf of the State of Missouri (state), brings this action in mandamus against the Honorable H. Michael Coburn, Sixteenth Judicial Circuit (respondent). In the underlying criminal case, the Caucasian defendant peremptorily struck the only five black venirepersons from the venire. The state sought by motion respondent's order compelling defendant to articulate race neutral reasons for striking the five venirepersons. Respondent denied the state's motion, and the defendant declined to state any reasons for exercising his peremptory strikes. The jury was not sworn in order to permit the state the opportunity to seek extraordinary remedy. The issue presented is whether a Caucasian defendant in a criminal case can be compelled to state a race neutral reason for exercising a peremptory strike against a black venireperson. The preliminary writ of mandamus is made absolute.

Defendant Kevin Baker is charged by indictment in Jackson County with second degree murder and armed criminal action. During the jury selection process, Mr. Baker, a white male who allegedly perpetrated the charged criminal action against a black victim, utilized five of six peremptory challenges to strike black venirepersons. This resulted in a jury panel of twelve white persons and one white alternate.

The state filed a motion to disallow Mr. Baker's five peremptory challenges striking black venirepersons unless he provided a racially neutral reason for striking each one. Respondent overruled the motion. Respondent did not swear the proposed jury in order to permit the state to test the rule of law by seeking a writ of mandamus to require respondent to compel Mr. Baker to state a racially neutral reason for striking each of the five black venirepersons.

Granting a writ of mandamus is an extraordinary remedy. *State ex inf. Riederer v. Collins*, 799 S.W.2d 644, 646 (Mo. App.1990). For a writ of mandamus to issue, two elements must be proven. The state must prove, first, that the respondent has a clear and unequivocal duty to require the defendant to produce racially neutral reasons for utilizing his five peremptory challenges against black venirepersons and, second, that the state has no adequate remedy other than mandamus. *Peach v. Calvin*, 753 S.W.2d 82, 83 (Mo.App.1988). The writ's purpose is "to compel performance of a particular act by one who has an unequivocal duty to perform the act." *Collins*, 799 S.W.2d at 646.

Addressing the second element, the state does not have an adequate alternative remedy other than extraordinary relief. The trial court's refusal to grant the state's motion requires the state to proceed to trial absent the venirepersons stricken by Mr. Baker. The state does not have recourse under § 494.465 because this section is "the exclusive means by which a party in a case may challenge a jury on the ground that the jury was not selected in conformity to sections 494.400 to 494.505." § 494.-465.3, RSMo Supp.1990. The state is challenging the jury selection based on constitutional violations, not violations of the state statute. "No appeal lies from respondent's decision prior to trial and the double jeopardy clause renders meaningless any effort to correct respondent's ... [decision] following trial." *State ex rel. Dally v. Elliston*, 811 S.W.2d 371, 373 (Mo. banc 1991) (citing § 547.200.2, RSMo 1986, and *State v. Coor*, 740 S.W.2d 350 (Mo.App. 1987)). Therefore, the state's proper remedy is mandamus. Accordingly, analysis now focuses on whether respondent had a clear duty to grant the state's motion.

Several recent United States Supreme Court decisions demonstrate that the trial judge had a duty to sustain the state's motion to compel Mr. Baker to state a racially neutral reason for striking each black venireperson and to quash the peremptory challenges if respondent found that Mr. Baker struck the venirepersons because of their race. The Supreme Court has held that use of peremptory challenges based upon racially motivated reasons violates the stricken venirepersons' equal protection rights. *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). These decisions condemn racially discriminatory use of peremptory strikes and identify persons who have standing to raise the stricken venirepersons' equal protection rights.[1]

Review of case evolution regarding the issue is helpful. The Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), determined that in criminal cases a state may not use peremptory challenges to strike a venireperson of the same minority race as the defendant. However, the burden was on the defendant to prove a pattern of exclusion. In *Batson*, the Supreme Court shifted the burden to the state to establish a racially neutral reason for striking a venireperson of the same racial minority as the defendant. 476 U.S. 79, 106 S.Ct. 1712. The *Batson* decision provided relief to the criminal defendant, allowing him to object to improper peremptory challenges against individuals of his own minority race. *Id.* Subsequently, the Court expanded *Batson*'s prohibition and held that a criminal defendant, regardless of race, may object to the state's racially discriminatory exclusion of venirepersons. *Powers*, 499 U.S. ——, 111 S.Ct. 1364. The Court formulated a two-part analysis for its decision.

1. A prima facie case has been made that peremptory strikes were utilized in a racially discriminatory manner. *Batson*, 476 U.S. 79, 106 S.Ct. 1712 (black criminal defendant may object to the state's discriminatory use of peremptory strikes against black venirepersons); *Powers*, 499 U.S. ——, 111 S.Ct. 1364 (white criminal defendant may object to the state's discriminatory use of peremptory strikes against black venirepersons); *Edmonson*, —— U.S. ——, 111 S.Ct. 2077 (black civil litigant may object to opposing party's discrimination against black venirepersons).

First, the Court stated that the state's race-based peremptory challenge violates the stricken venireperson's equal protection rights. *Id.* at ——, 111 S.Ct. at 1370. Second, the Court held that a defendant has standing to raise the excluded venireperson's equal protection rights. *Id.* at ——, 111 S.Ct. at 1373.

The Supreme Court recently expanded the prohibition of discriminatory peremptory challenges to all private litigants. *Edmonson,* —— U.S. ——, 111 S.Ct. 2077. The Court in *Edmonson* held that private litigants are also bound by constitutional mandate to exercise peremptory strikes in a race-neutral manner. *Id.* at ——, 111 S.Ct. at 2087.

■ The Constitution limits state action, not private action, through the 14th Amendment and for the restrictions of the Constitution to apply to acts of individuals, state action must be present. The *Edmonson* Court implemented the framework for determining if state action is present in the jury selection process. *Id.* (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936–37, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982)). The *Edmonson* test is "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." *Id.* at ——, 111 S.Ct. at 2082–83 (citations omitted). These two elements must be present for private litigants, such as a criminal defendant, to be restricted to the parameters of constitutionally-permitted actions.

The *Edmonson* Court definitively concluded that peremptory challenges are an exercise of a right or privilege originating in state authority. *Id.* at ——, 111 S.Ct. at 2083. "By their very nature, peremptory challenges have no significance outside a court of law. Their sole purpose is to permit litigants to assist the government in

the selection of an impartial trier of fact.... [T]here is no constitutional obligation to allow them." *Id.* The defendant, Mr. Baker, exercised peremptory challenges pursuant to § 546.180, RSMo 1986. Mr. Baker could not have committed the alleged racially discriminatory acts without this state statute granting him authority to peremptorily strike the five black venirepersons.

The second part of the *Edmonson* analysis is whether a criminal defendant can reasonably be described as a state actor. *Id.* The Court developed a three-part test for this determination, which "examine[s] the following: [1] the extent to which the actor relies on governmental assistance and benefits; [2] whether the the [sic] actor is performing a traditional governmental function; and [3] whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Id.* (citations omitted).

Criminal defendants rely considerably on governmental assistance in selecting a jury. "It cannot be disputed that, without the overt, significant participation of the government, the peremptory challenge system, as well as the jury trial system of which it is a part, simply could not exist." *Id.* at ——, 111 S.Ct. at 2084.

Mr. Baker, in exercising his peremptory challenges, performs a traditional governmental function. "The peremptory challenge is used in selecting an entity that is a quintessential governmental body, having no attributes of a private actor. The jury exercises the power of the court and of the government that confers the court's jurisdiction." *Id.* at ——, 111 S.Ct. at 2085. Thus, the private litigant, in this case the criminal defendant,[2] is participating significantly in the process of choosing jurors to perform a uniquely governmental function. The criminal defendant is therefore "bound by the constitutional mandate of race-neutrality." *Id.*

**2.** The Supreme Court in *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), held that a public defender is not a state actor for purposes of a § 1983 action. The Court recognized the public defender to be a

private litigant. *Id.* As a private litigant, the civil defendant is subject to racial neutrality as set forth in *Edmonson,* —— U.S. ——, 111 S.Ct. 2077.

Finally, the injury incurred by the excluded venirepersons is made more severe because government permits the racially discriminatory act to be perpetrated in the courthouse, the very location where Americans expect their constitutional rights to be protected. Allowing a private litigant to racially discriminate against a venireperson taints "the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." *Id.* at ——, 111 S.Ct. at 2087. Court condoned discriminatory acts makes the excluded venirepersons' injuries more severe. Thus, the defendant, as a private litigant, is performing as a state actor in selecting a jury and is thereby subject to the constraints of the Constitution. The defendant's discriminatory use of peremptory strikes violated the venirepersons' equal protection rights.

■■■■ The next determination is whether the state has standing to raise the issue that the stricken venirepersons' constitutional rights to equal protection were violated. The state has standing if (1) the state has suffered a concrete, redressable injury; (2) the state has a close relationship with the venirepersons; and (3) some barrier exists which prevents the excused venirepersons from protecting their own rights. *Id.* at ——, 111 S.Ct. at 2087. *See also Powers,* 499 U.S. at ——, 111 S.Ct. at 1370–71.

The state suffers a concrete, redressable injury. When racial discrimination is allowed in the courts of justice, the integrity of the judicial process is brought into question. *Powers,* 499 U.S. at ——, 111 S.Ct. at 1371 (quoting *Rose v. Mitchell,* 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979)). The jury system is based on notions of justice and fairness. Condoned racially discriminatory peremptory challenges during the jury selection process erodes the perception of fairness. Impugning the jury selection process threatens the jury system as a purveyor of justice and the state's ability to administer justice.

The state, as litigant, has a relationship with venirepersons. This relationship allows the state, in representing the collective interests of its citizenry, to rely on the

jury to render a fair and just verdict. "Whether in a civil or criminal proceeding, '[v]oir dire permits a party to establish a relation, if not a bond of trust, with the jurors,' a relation that 'continues throughout the entire trial.' Exclusion of a juror on the basis of race severs that relation in an invidious way." *Edmonson,* —— U.S. at ——, 111 S.Ct. at 2087–88 (quoting *Powers,* 499 U.S. at ——, 111 S.Ct. at 1372).

Finally, the Supreme Court has recognized that "[t]he barriers to a suit by an excluded juror are daunting.... The reality is that a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights." *Powers,* 499 U.S. at ——, 111 S.Ct. at 1373. The state has standing to raise the issue that the stricken venirepersons' equal protection rights may have been violated by the defendant's exercise of peremptory strikes.

The criminal defendant, as a private litigant, is constrained by the constitutional mandates of racial neutrality as set forth in *Edmonson,* —— U.S. ——, 111 S.Ct. 2077. Racial discrimination by a criminal defendant is no less tolerable than discrimination by the state or private litigants in a civil action. "In either case, race is the sole reason for denying the excluded venireperson the honor and privilege of participating in our system of justice." *Id.* at ——, 111 S.Ct. at 2082.

The Federal Constitution provides significant rights to criminal defendants. Among the rights guaranteed criminal defendants are the privilege against self-incrimination, the right to confront and cross-examine witnesses, the right to compulsory process for obtaining favorable testimony, the right to the assistance of counsel, the right to an impartial jury, and the general guarantees of due process. U.S. Const. Amends. V, VI, XIV. *See also* Mo. Const. Art. I, §§ 10, 18(a), and 22(a). However, the Constitution does not guarantee to a criminal defendant a right to abrogate the constitutionally guaranteed equal protection rights of citizens serving as venirepersons. Therefore, according to the holdings of *Batson, Pow-*

*ers,* and *Edmonson,* the defendant must present race-neutral reasons for excluding the five black venirepersons which he attempted to peremptorily strike.

In the present case, a prima facie case of racial discrimination in the use of peremptory strikes has been made. The precedent set forth in *Batson, Powers,* and *Edmonson* applies to criminal defendants as private litigants who are not permitted to use peremptory strikes in a racially discriminatory manner. *Edmonson,* ── U.S. ──, 111 S.Ct. 2077. The criminal defendant, as a private litigant, is "bound by the constitutional mandate of race-neutrality." *Id.* at ──, 111 S.Ct. at 2085. Respondent's denial of the state's motion to disallow defendant's peremptory challenges of the five black venirepersons unless defendant states race neutral reasons for exercising each of the strikes was error. The state's sole remedy was mandamus because it had no right to appeal.

The preliminary writ of mandamus is made absolute. Respondent is directed to require defendant Baker to present racially neutral reasons for peremptorily striking each of the five black venirepersons. Should defendant fail or refuse to do so, respondent is directed to deny the peremptory strike for which the defendant fails or refuses to express a racially neutral reason as being discriminatory and violative of the excluded venireperson's equal protection rights.

The motion to quash the preliminary writ in mandamus, filed in behalf of Respondent, is denied for the reasons expressed herein.

All concur.